| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>**Greenbaum, Rowe, Smith & Davis LLP**<br>99 Wood Avenue South<br>Iselin, New Jersey 08830<br>(732) 549-5600<br>David L. Bruck, Esq.<br>dbruck@greenbaumlaw.com<br>*Proposed Co-Counsel to the Debtors and Debtors in Possession* | |
| In re:<br><br>**ATLANTIC NEUROSURGICAL SPECIALISTS, P.A.**,<br><br>                  Debtor. | Chapter 11<br><br>**Case No. 24-15726**<br><br>**Hearing Date: June 11, 2024** |
| In re:<br><br>**ANS NEWCO, LLC,**<br><br>                  Debtor. | Chapter 11<br>**Joint Administration Requested**<br><br>**Case No. 24-15727**<br><br>**Hearing Date: June 11, 2024** |

## DECLARATION OF DR. RONALD BENITEZ IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

In support of the filing of the Chapter 11 petitions by the debtors in these cases I, Dr. Ronald Benitez, declare as follows:

1.    I am the President of each of Atlantic NeuroSurgical Specialists, P.A. and ANS Newco LLC (collectively referred to as the "Practice, ANS or the Debtors"). I have been President of each of the Debtors since October 2022. I am a New Jersey licensed physician practicing in the neurosurgical field and have been so for many years. I am very familiar with the day-to-day operations, affairs and books and records of ANS.

2.    On June 5, 2024, the Debtors filed chapter 11 petitions in this Court.

9153240.1

3.  The Debtors are currently in wind down and are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107 (a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. No official committee of unsecured creditors has been appointed.

4.  The Debtors have filed several motions and applications (the First Day Motions) to permit the Debtors to continue operating in these Chapter 11 proceedings with minimum disruption to the operation of the Debtors or loss of value. I have reviewed the First Day Motions and believe that the relief sought in each motion will be beneficial to the wind down of the operation of the business of the Debtors as more fully set forth below and will preserve the value of the Debtors' estates.

5.  I submit this Declaration in further support of the First Day Motions. Except as may be otherwise indicated, all facts set forth in the First Day Motions and this Declaration are based on my personal knowledge and information provided to me by the Debtors and their professionals, were based upon my review of relevant documents and are my opinions and beliefs based upon my experience and knowledge of the Debtors' operations and financial condition.

6.  I am authorized by the Debtors and their respective Board of Directors and Board of Managers to execute and submit this Declaration to the Court.

7.  The Declaration is divided into five sections. The **first** section describes the history and business of the Debtors. The **second** section describes the Debtors' prepetition financial condition. The **third** section describes the facts leading up to the filing of these chapter 11 cases. The **fourth** section sets forth additional facts in support of each of the First Day Motions and the statement by the Declarant that he believes the motion is in the best interest of the process of the cases and the interest of stakeholders. The **fifth** section refers to a Schedule which details the cash flow projections of the Debtors for the next six (6) months.

## SECTION I
## HISTORY, BUSINESS AND RELEVANT BACKGROUND.

8.  ANS was, prior to December 15, 2023, a neurosurgical practice located primarily in Morristown, New Jersey providing neurosurgical services to the New Jersey communities in which it operated. ANS was originally incorporated in 1973. The physicians of ANS were affiliated with several hospitals in the north and central New Jersey regions. The offices of the Practice are currently located at 60A Columbia Drive, Morristown, New Jersey. Prior to December 15, 2023, ANS maintained offices at 310 Madison Avenue, Morristown, New Jersey and at other locations throughout Northern and Central New Jersey, On or about December 15, 2023, the physicians at ANS left the Practice. The Practice has been winding down since that date.

9.  ANS is wholly owned by ANS Founders PC. The shareholders of ANS Founders PC are doctors Jonathan Baskin, Ronald Benitez, Kyle Chapple, Jay Chun, Jack Knightly, Scott Meyer, Yaron Moshel and Paul Saphier.

9153240.1

10. ANS Newco LLC is a Delaware limited liability company which was formed in 2021 in connection with a tax-free F reorganization. ANS Newco LLC is the employer of all clinical employees at the Practice. It was intended that after the F Reorganization, that the Practice and its contracts would be shifted to ANS Newco LLC, but in reality, the reorganization was not implemented and while certain contractual obligations were assigned to ANS Newco LLC, the Practice continued through Atlantic NeuroSurgical Specialists, P.A. for all purposes.

11. Attached hereto as Exhibit A is an organizational chart of ANS and its related and affiliated parties.

12. After the Debtors discontinued providing medical services on January 23, 2024, the Practice retained the services of GlassRatner Advisory & Capital Group LLC d/b/a B. Riley Advisory Services (B Riley) as financial advisor and Thomas Buck as the Chief Restructuring Officer to oversee the wind down of the business of the Practice. The wind down procedures include maintaining patient records and providing patients with access to the records, collecting accounts receivable, processing billings as existed on December 15, 2023, overseeing operating expenses, maintaining insurances in place and otherwise overseeing the orderly preservation of the value of the business.

13. Among other things, Mr. Buck has put in place a system to maintain patient records so that patients can access their records and the Debtors intend to put in place a retention system for patient records subject to court approval. The Debtors have retained a third party to oversee the termination and wind down of the Debtors' retirement plans. As set forth in the Motion with respect to banking and cash management, the Debtors and their non debtor affiliate manage the day to day operations and are responsible for collecting accounts receivable and disbursing funds. Except with respect to the operation of Hanover Hills Surgery Center LLC, which is indirectly owned in part by ANS, substantially all of the revenue was generated through the Practice. As noted in the Banking Motion, payroll is handled by a third-party provider (Insperity) which disburses payroll for the three historical entities that had employees.

14. The Debtors are managed internally by their respective Board of Directors and Board of Managers (collectively, the "Boards"), each comprised of the same 3 members. The current Boards are made up of myself as the President, Kyle Chapple as the Vice President and Yaron Moshel as the Secretary/Treasurer. I and Kyle Chapple have been members of the Boards since October 2022. Yaron Moshel has recently become a member of the Boards.

**TRANSACTION WITH LORIENT CAPITAL LLC.**

15. In October 2017, Atlantic NeuroSurgical Specialists, P.A. and its then nine shareholders formed a management company named ANS Continuum Holdco LLC (the "MSO"). Atlantic NeuroSurgical Specialists, P.A. sold 40% of the membership interests in the MSO for approximately $32M to an entity called Continuum Institute Atlantic LLC ("CIA") and 1% of the membership interest was owned by the then 9 shareholders of Atlantic NeuroSurgical Specialists, P.A.., and 59% of the MSO is owned by the Debtors. Atlantic NeuroSurgical Specialists, P.A. entered into a long term Exclusive Management Services Agreement (the "MSA") with the MSO

pursuant to which the MSO was to provide full non-clinical management services to the Practice in exchange for which the Practice agreed to pay to the MSO management fees.

16. The members of the Boards are also three of the managers on the Board of Managers of the MSO (the "MSO Board"). The managing member of the MSO is CIA, and representatives of CIA also are members of the MSO Board.

17. CIA was then and is now owned by a private equity group called Lorient Capital LLC ("Lorient"). In October 2017, Lorient, through its wholly owned entity, CIA, borrowed roughly $21M (the "Initial Loan") from KeyBank and used the initial loan, together with its own funds, to buy the 40% interest in the MSO. Each of the shareholders of Atlantic NeuroSurgical Specialists, P.A. received approximately $3.6M. In addition, a Subordinated Note was given by CIA to Atlantic NeuroSurgical Specialists, P.A. in the amount of $6,860,000 as a deferred portion of the purchase price of the 40% interest in the MSO. The Subordinated Note is subordinate to the loan from KeyBank to CIA which was guaranteed by the MSO.

18. In connection with the F Reorganization in 2021, the Subordinated Note was assigned by Atlantic NeuroSurgical Specialists, P.A. to ANS Founders PC. It appears that the outstanding balance due by CIA on the Subordinated Note is roughly $4M. Payment of the Subordinated Note is as stated above subordinated to CIA's obligations on the loans to KeyBank. The Subordinated Note is in default.

19. Each of the physician members of Atlantic NeuroSurgical Specialists, P.A. entered into employment agreements with the Practice. In connection with the F Reorganization in 2021, the employment agreements were assigned to ANS Newco LLC.

20. Subsequently on or about January 1, 2019, KeyBank funded an additional loan to an entity called Florham Park Investors LLC, a wholly-owned subsidiary of the MSO, in the amount of $4M (the "Hanover Hills Loan") which in turn was used by the MSO to acquire, through Florham Park Investors LLC, an entity called Hanover Hills Surgery Center LLC which held a license issued by the New Jersey Department of Health to own and operate an ambulatory surgery center and a lease on a surgery center located in Florham Park, New Jersey. Physicians at ANS used the Hanover Hills Surgery Center in connection with the performance of their medical services as clinically appropriate. The MSO continues to own Florham Park Investors LLC, which, in turn, owns Hanover Hills Surgery Center LLC. It is anticipated that Hanover Hills Surgery Center LLC will file bankruptcy proceedings and solicit offers for the sale of the license and the assumption of the lease for the surgery center.

21. In October 2021, David Wells-Roth, a shareholder of Atlantic NeuroSurgical Specialists, P.A. left the Practice.

## DISPUTES WITH LORIENT, DEFAULT ON THE KEYBANK LOAN AND SUBSEQUENT NEGOTIATIONS.

22. Nearly from the start of the relationship between ANS and the MSO, disputes arose regarding the performance by the MSO of its management services. By 2021, payments by CIA to KeyBank under the loan documents between CIA and KeyBank (the "Loan Documents") fell into default. CIA, the MSO and KeyBank entered into two forbearance agreements: the last one expired in August 2022. Because of the continuing defaults by the MSO under the MSA, ANS stopped paying the management fees to the MSO in early-2023. Also, at some point, CIA stopped paying the debt service to Key Bank. KeyBank, CIA, the MSO and ANS attempted settlement discussions to resolve matters, including attempting to sell the MSO to a third party. The sale of the MSO did not happen and the negotiations among the parties broke down.

23. During 2023, after continued attempts at negotiating a settlement failed, KeyBank and Lorient requested that the MSO retain a neutral party to assist them with the settlement discussions. KeyBank and Lorient insisted that the MSO retain Gibbins Advisors ("Gibbins") as the neutral party. The MSO, with funding from ANS, retained Gibbins in or about June 2023 to act as the neutral party. Gibbins did due diligence regarding the claims of the parties, the financial status of ANS, the position of KeyBank and made suggestions to resolve the matter in a Report dated August 2023 and revised in September 2023. Neither Key Bank, Lorient nor ANS accepted Gibbins' proposed settlement.. The parties continued to negotiate, but without success.

24. KeyBank filed an Order to Show Cause for the appointment of a receiver in the Superior Court of New Jersey, Morris County on April 3, 2024 (the "State Court Action"). The hearing on the receivership motion was scheduled for June 6, 2024. On June 5, 2024, ANS filed the within Chapter 11 petitions in order to preserve its assets for an orderly liquidation for the benefit of all stakeholders.

25. KeyBank, Lorient and ANS continue to negotiate a settlement of the claims in dispute. It is anticipated that upon completion of the negotiation of the terms of settlement, a motion to approve the settlement will be filed with the Bankruptcy Court.

26. The claims against ANS held by the MSO have been assigned to KeyBank based upon statements from KeyBank. KeyBank is reflected as one of the 20 largest creditors in the Petitions pending a further review of the validity of the assignment of the claims of the MSO to KeyBank. The list of the 20 largest unsecured creditors also includes the claims of the MSO against the Debtors. I am advised that the claims are identical and duplicative.

## SECTION II
## THE DEBTORS' PREPETITION FINANCIAL CONDITION.

27. Other than a few equipment financing loans/leases, the Debtors have no secured debt.

28. As of the Petition Date, the Debtors estimate that the unsecured debt is approximately $21M-$23M of which the MSO holds the largest claim for unpaid management fees (approximately $20M).

29. Based upon the allegations in the State Court Action, KeyBank alleges that it has enforced its remedies as against the MSO and now holds the claims of the MSO as against the Debtors. The Debtors are neither borrowers nor guarantors of the KeyBank debt. The Initial Loan was made to CIA and is guaranteed by the MSO.

30. The Debtors have approximately $2.8MM in cash, and the Debtors and their affiliates have in total approximately $3.6M in cash and $2.9M in accounts receivable on the balance sheet. The Debtors own 59% of the MSO which in turn owns Florham Park Investors, LLC, which in turn owns Hanover Hills Surgery Center, LLC. The Debtors also own an entity called New Jersey Pain Management (NJPM) which was acquired several years ago. NJPM is no longer in operation.

31. Hanover Hills Surgery Center, LLC has a New Jersey Department of Health license to own and operate an ambulatory surgery center at the leased premises together with a lease for the premises. The lease has roughly 5 years to run. Hanover Hills Surgery Center, LLC is owned by Florham Park Investors, LLC, which, in turn, is owned by the MSO; and KeyBank has asserted a security interest in the assets of Hanover Hills Surgery Center, LLC. At this time, the value of the assets held by Hanover Hills Surgery Center LLC is unknown.

## SECTION III
## CIRCUMSTANCES LEADING TO THE FILING OF CHAPTER 11 CASES.

32. The unresolved disputes among the Debtors, the MSO, Lorient and KeyBank lead to further disputes among the members of the Practice. After several attempts to settle the disputes with the MSO, Lorient and KeyBank, all of which failed, the physician members of the Practice decided to leave the Practice which they did from December 1-December 15, 2023. The physicians opened new practices. Some of the physicians remained together and others did not. The assets of the Practice including cash and accounts receivable were left with the Practice.

33. As previously stated, on January 23, 2024, the Practice retained B. Riley to oversee and manage the wind down of the Practice and Thomas Buck was retained as the CRO.

34. On April 3, 2024, KeyBank filed a complaint and order to show cause in the Superior Court of New Jersey, Morris County, Dkt # MRS-C-29-24. The order to show cause sought the appointment of a receiver for the Practice. The return date of the OTSC was June 6, 2024. In order to maximize the value of the Practice and avoid the extra expense of a receiver and its professionals, the Debtors file the within Chapter 11 petitions on June 5, 2024.

# SECTION IV
# **FIRST DAY MOTIONS.**

35. The Debtors have filed First Day Motions seeking various forms of relief designed to maximize the value of the Debtors' estates for the benefit of creditors and other stakeholders in these proceedings. I have reviewed each of the First Day Motions and believe that the Debtors have satisfied the applicable standards for relief requested in each instance and believe that granting the relief as requested is in the best interest of the Debtors, their estates and creditors and parties in interest in these proceedings.

36. Below, I have summarized each of the First Day Motions:

a. **Motion for Joint Administration-**

   i. The Debtors request that the Court enter an order granting joint administration of these cases. Granting such relief will ease the administration of these cases. The Debtors request that the Court maintain one file and docket the Debtors' jointly administered cases under the case of Atlantic NeuroSurgical Specialists, P.A. and that the case be administered under a consolidated caption. The Debtors request that an entry be made on the docket to the effect that the cases will be jointly administered. Since ANS Newco LLC and Atlantic NeuroSurgical Specialists, P.A. have some of the same creditors and other parties in interest, permitting joint administration will eliminate duplication and provide both cases with greater ease and efficiency. No party will be prejudiced by the entry of the requested order and there will be significant cost savings which will be beneficial to all stakeholders.

   ii. I believe that granting relief for joint administration will be in the best interest of creditors in the cases and will promote greater ease of administration and costs savings. Accordingly, I request that the Court approve the motion for joint administration.

b. **Cash Management and Banking Motion-** The Debtors seek entry of an Order authorizing the Debtors to continue to use their existing cash management system and bank accounts and continue to use their existing business forms, checks and records.

   i. As of the Petition Date, the Debtors and their non-debtor affiliates maintain 9 bank accounts at Wells Fargo, Peapack Gladstone and KeyBank. The bank accounts are maintained at financially stable banking institutions and are insured by the Federal Deposit Insurance Co. Presently the Debtor's accounts hold approximately $2.8M and the Debtors and their affiliates have total cash in the bank accounts of approximately $3.6M. A listing of the bank accounts is attached to the banking and cash management motion.

ii. In the ordinary course of business, the Debtors and their affiliates maintain a cash management system to receive and disburse funds. The Debtors and their non debtor affiliate management services organization (MSO), ANS Continuum Holdco LLC manage the day-to-day operations and are responsible for collecting accounts receivable, depositing monies to the appropriate accounts, managing appropriate intercompany transfers, and paying the costs of operating the businesses. All transfers in and out are recorded and traceable. The Debtors and their affiliates use a third-party professional employer, Insperity, Inc. for payroll services. Payroll at this point consists of 3 employees (2 employes assigned to the MSO and 1 employee assigned to Hanover Hills).

iii. The cash management system used by the Debtors was designed to enable the Debtors to have central control over the receipt and disbursement of funds and to reduce administrative expenses in the best interest of the Debtors and their stakeholders. The procedures employed by the Debtors constitute the Debtors' ordinary course transactions and are like other medical practices. A schedule showing the various Accounts used in the Cash Management system is attached to the Cash Management Motion.

iv. I believe that the continued use of the Debtors' cash management system is in the best interest of the Debtors' estates and all parties in interest in these proceedings. I request that the Court approve the Debtors' motion to continue to use its cash management system and bank accounts.

c. **The Insurance Motion**- The Debtors seek the entry of an order authorizing the Debtors to pay prepetition insurance premiums and to continue to pay prepetition insurance programs and pay all prepetition insurance obligations with respect thereto.

   i. In connection with the day-to-day operation of their business, the Debtors maintain insurance programs and related insurance policies through different insurance providers. A list of the insurance policies and the different coverages is attached as Exhibit A. In the aggregate, the annual premiums for such policies approximate $277,000. As of the Petition Date, the Debtors believe that they are current in their payment obligations under their various insurance policies.

   ii. Maintaining insurance in effect is essential to the preservation of the value of the Debtors' business. In addition, in certain cases the insurance carried is required to be carried by the laws that govern the continuation of the Debtors' business. It is critical that the insurance be maintained in place and in the best interest of stakeholders in these Chapter 11 proceedings.

   iii. Among other things, failure to maintain insurance would leave the Debtors exposed for the payment of claims that might otherwise be covered by the policies. Losing the present insurance coverage will only lead to additional costs to obtain coverage at a later date if available.

  iv. I believe that the entry of an order granting the Insurance Motion is in the best interest of the Debtors' estates, creditors and all parties with an interest in these chapter 11 proceedings. Entry of the order as requested will enable the Debtors to continue to operate and preserve their assets in the interest of stakeholders.

  v. I request that the Court grant the Insurance Motion.

d. **The Motion to Retain B. Riley and Thomas Buck as Chief Restructuring Officer-** The Debtors seek the entry of an order authorizing the retention of B. Riley and the appointment of Thomas Buck as the CRO of the Debtors.

  i. As set forth in the Application for the retention of B. Riley and the appointment of Thomas Buck as the CRO of the Debtors, both B. Riley and Thomas Buck have many years of experience in crisis management and financial services.

  ii. B. Riley was engaged by ANS on or about January 25, 2024 and Thomas Buck immediately stepped into the management of the affairs of the Debtors in wind down. Since that day, Thomas Buck has become fully familiar with the books and records of the Debtors as well as the history surrounding the transactions in 2017 and 2019 with Lorient and the other parties to the entry by the Debtors into the MSA with the MSO as well as its relationship with KeyBank.

  iii. In his role as CRO, Buck shall oversee the wind down activities of the Debtors, including accounts receivable, billings, insurance matters and preparation of the Debtors for a bankruptcy filing.

  iv. Buck and B. Riley have worked to preserve the value of the assets of the Debtors.

  v. I believe that the entry of an order granting approval of the retention by the Debtors of B. Riley and Buck as the CRO of the Debtors is in the best interest of the estates as well as all creditors and other stakeholders in these proceedings.

  vi. I request that the Court grant the relief requested in the Application to retain B. Riley and to appoint Buck as the CRO of the Debtors during this chapter 11 proceeding.

e. **The Motion to Extend the Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs-** The Debtors seek entry of an order extending the time to file Schedules and Statements of Financial Affairs for a period of 10 days beyond the 14 day provision in Bankruptcy Code section 521.

  i. I believe that the relief requested in the extension of time to file Schedules and Statements of Financial Affairs is appropriate and in the best interest of the orderly process of these Chapter 11 cases because (1) no party will be prejudiced or adversely affected by the extension of time as requested; and (2) the Debtors have

minimum employees and the extra time will enable the completion of the schedules and financial statements in accurate form and will relieve the bankruptcy estates of an administrative burden, allowing the Debtors' focus to be on the transition to chapter 11 and preserving value for stakeholders of the bankruptcy estates.

## SECTION V
## CASH FLOW.

Attached hereto as Exhibit B is a projection of the cash flow of the Debtors' wind down for the next five months through October 31, 2024. The cash flow exhibit has been prepared by B Riley of the Debtors and is based upon his review of the books and records of the Debtors and projections based thereon.

Pursuant to 28 U.S.C. section 1746, I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and accurate to the best of my knowledge based upon information provided to me by the Debtors' professionals.

Dated June 7, 2024        /s/ Ronald Benitez
                          Dr. Ronald Benitez
                          President of the Debtors

# EXHIBIT A

