| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1** | |
| In re:<br><br>**ATLANTIC NEUROSURGICAL SPECIALISTS, P.A.**<br>***et al,*[1]**<br><br>    Debtors. | Chapter 11<br><br>**Case No. 24-15726(VFP)**<br><br>**Jointly Administered** |

## COMBINED JOINT DISCLOSURE STATEMENT
## AND JOINT CHAPTER 11 PLAN OF LIQUIDATION

| | |
|---|---|
| **GREENBAUM, ROWE, SMITH & DAVIS LLP**<br>David L. Bruck, Esq.<br>P.O. Box 5600<br>Woodbridge, New Jersey 07095<br>Telephone: (732) 549-5600<br>Facsimile: (732) 476-2441<br>dbruck@greenbaumlaw.com | **FOX ROTHSCHILD LLP**<br>Joseph J. DiPasquale, Esq.<br>Michael R. Herz, Esq.<br>Agostino A. Zammiello, Esq.<br>49 Market Street<br>Morristown, New Jersey 07960<br>Telephone: (973) 992-4800<br>Facsimile: (973) 992-9125<br>jdipasquale@foxrothschild.com<br>mherz@foxrothschild.com<br>azammiello@foxrothschild.com |
| *Counsel for the Debtors and*<br> *Debtors in Possession, Atlantic*<br> *Neurosurgical Specialists PA*<br> *and ANS Newco LLC* | *Counsel to the Debtor and Debtor in*<br> *Possession, Hanover Hills*<br> *Surgery Center LLC* |

Dated: October , 2024

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Atlantic Neurosurgical Specialists, P.A., d/b/a Altair Health (0733); ANS Newco, LLC, Atlantic Neurosurgical Specialists (7893); and Hanover Hills Surgery Center LLC, d/b/a Altair Health Surgical Center (8645).

## Table of Contents

|  | Page |
|---|---|
| DISCLAIMER | 1 |
| INTRODCUTION | 2 |
| ARTICLE I - Definition and Construction of Terms | 3 |
| ARTICLE II - Background | 3 |
| 2.01 General Background | 3 |
| (a) The Debtors' History and Organizational Structure | 3 |
| (b) The Lorient Transaction | 4 |
| (c) Capital Structure of Debtor Hanover Hills | 5 |
| ARTICLE III - Events Giving Rise to These Chapter 11 Cases | 5 |
| ARTICLE IV - Certain Proceedings and Motions in These Chapter 11 Cases | 5 |
| a.    The Debtors' Bankruptcy Filings and First Day Motions | 5 |
| b.    The Debtors' Post-Petition Operations | 7 |
| ARTICLE V - The Proposals For A Global Settlement of All Claims | 7 |
| ARTICLE VI – Certain Procedures | 10 |
| 6.01 Confirmation Procedures | 10 |
| 6.02 Procedure for Objections | 10 |
| 6.03 Requirements for Confirmation | 11 |
| 6.04 Classification for Claims and Interests | 11 |
| 6.05 Impaired Claims or Interests | 12 |
| 6.06 Confirmation Without Necessary Acceptances; Cramdown | 12 |
| a. Secured Creditors | 13 |
| b. Unsecured Creditors | 13 |
| c. Equity Interests | 13 |
| 6.07 Feasibility | 14 |
| 6.08 Best Interests Test and Liquation Analysis | 14 |
| 6.09 Acceptance of the Plan | 15 |
| ARTICLE VII – Classification of Claims and Interests and Expected Recoveries | 15 |
| 7.01 Overview of Classification | 15 |
| 7.02 Indentifcation and Treatment of Unclassified Claims | 16 |
| (a) Administrative Claims | 16 |
| (i) Final Administrative Claims Bar Date | 16 |
| (ii) Bar Date for Applications for Professional Fees | 16 |
| (b) U.S. Trustee Fees | 16 |
| (c) Priority Tax Claims | 17 |
| (d) Ordinary Course Liabilities | 17 |
| 7.03 Identification and Treatment of Classes of Claims | 17 |
| (a) Class 1: Priority Non-Tax Claims against the Debtors | 17 |
| (b) Class 2: General Unsecured Claims Excluding the General Unsecured Claims Held by KeyBank (and KeyBank Predecessors (2) in Interest) and against the ANS Debtors | 17 |
| (c) Class 3: General Unsecured Claims Held by KeyBank (and KeyBank Predecessor(s) in Interest) and against the ANS Debtors | 17 |
| (d) Class 4: Secured Claim Held by KeyBank Against Debtor Hanover Hills | 18 |
| (e) Class 5: General Unsecured Claim Against Debtor Hanover Hills | 18 |
| (f) Class 6: Intercompany Claims | 18 |
| (g) Class 7: Interests | 18 |

7.04 Treatment of Classified Classes, Rights to Vote, and Estimated Distributions ............ 19
7.05 Controversy Concerning Classification, Impairment or Voting Rights ....................... 23
7.06 Insurance Recourse ........................................................................................... 23
ARTICLE VIII – Certain Risk Factors To Be Considered Prior to Voting .............................. 24
8.01 The Plan May Not Be Accepted ........................................................................ 24
8.02 The Plan May Not Be Confirmed ...................................................................... 24
8.03 Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent
with Projections ...................................................................................................... 24
8.04 Objections to Classification of Claims ............................................................... 25
8.05 Failure to Consummate the Plan ....................................................................... 25
8.06 Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims
Under the Plan ....................................................................................................... 25
8.07 Certain Tax Considerations .............................................................................. 26
ARTICLE IX – The Liquidation Trust ............................................................................. 26
9.01 Liquation Trust .............................................................................................. 26
9.02 Establishment and Purpose of the Liquation Trust .............................................. 26
9.03 Authority and Role of the Liquation Trustee ..................................................... 26
9.04 Appointment of the Liquation Trustee ............................................................... 27
9.05 Liquation Trust Assets .................................................................................... 27
9.06 Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor-in-
Interest ................................................................................................................ 27
    (a) Liquidation Trust as a "Grantor Trust" .......................................................... 27
    (b) Valuation of Liquidation Trust Assets ............................................................. 28
    (c) Liquation Trustee's Right and Power to Invest ................................................. 28
9.07 Responsibilities of the Liquation Trustee ........................................................... 28
9.08 Establishment of the Post-Confirmation Committee ............................................ 29
9.09 Bankruptcy Court Approval of Liquidation Trustee Actions Not Required ................. 31
9.10 Expenses of the Liquidation Trust ..................................................................... 31
9.11 Compensation of the Liquidation Trustee ........................................................... 31
9.12 Fiduciary Duties of the Liquidation Trustee ........................................................ 31
9.13 Transfer of Books and Records ......................................................................... 31
9.14 Dissolution of the Liquidation Trust ................................................................. 31
9.15 Full and Final Satisfaction against Liquidation Trust ............................................. 32
ARTICLE X – Means For Implementation of the Plan ....................................................... 32
10.01 Interests in the Debtors .................................................................................. 32
10.02 Causes of Action ........................................................................................... 32
10.03 Release of Liens ........................................................................................... 32
10.04 Vesting and Sale or Other Disposition of Assets; Representative of the Estates ........ 32
10.05 Effectuating Documents; Further Transactions .................................................. 33
10.06 Deemed Partial Substantive Consolidation ....................................................... 33
10.07 Global Settlement ......................................................................................... 33
10.08 401K Matching Obligations ............................................................................ 35
10.09 Records ..................................................................................................... 35
10.10 Insurance Policies ......................................................................................... 36
    a. Insurance Policies ......................................................................................... 36
    b. Insurance Policies; Employment Practice Liability Policies; Professional Liability
    Policies; Similar Policies ................................................................................... 36
10.11 Dissolution of Committee ............................................................................... 36
10.12 Transfer of Privilege/No Waiver ...................................................................... 36

| | |
|---|---|
| 10.13 Final Decree | 37 |
| 10.14 Winddown Debtor ANS | 37 |
| ARTICLE XI – Executory Contracts | 37 |
| 11.01 Rejection of Executory Contracts | 37 |
| 11.02 Bar Date for Rejection Damages | 37 |
| ARTICLE XII – Provisions Governing Resolution of Claims and Distributions of Property Under the Plan | 38 |
| 12.01 Claim Objections | 38 |
| (a) Right to Object to Claims | 38 |
| (b) Claims Objection Deadlines | 38 |
| (c) Claim Estimation | 38 |
| 12.02 Distribution Provisions | 38 |
| (a) Distributions to be Made | 38 |
| (b) Establishment of Reserves | 39 |
| (c) Distribution Record Date | 39 |
| (d) No Liability | 39 |
| (e) Distributions on Account of Disputed Claims | 39 |
| (f) No Distributions Pending Allowances | 39 |
| (g) Distributions in Cash | 40 |
| (h) Timing of Distributions | 40 |
| (i) Unclaimed Distributions | 40 |
| (j) Delivery of Distributions and Undeliverable Distributions to Holders of Claims | 40 |
| (k) Undeliverable Distributions | 40 |
| (l) De Minimis Distributions | 41 |
| (m) Remainder Amounts After Final Distributions | 41 |
| 12.03 Preservations and Assignment of Subordination Rights | 41 |
| ARTICLE XIII – Exculpation Releases and Injunction | 41 |
| 13.01 Exculpation | 41 |
| 13.02 Debtors' and Shareholders' Releases | 42 |
| 13.03 Consensual Third-Party Releases | 43 |
| 13.04 Injunction | 44 |
| ARTICLE XIV – Conditions to Confirmation and Effective Date | 45 |
| 14.01 Conditions Precedent to Confirmation | 45 |
| 14.02 Conditions Precedent to the Effective Date | 45 |
| 14.03 Waiver of Conditions | 46 |
| 14.04 Effect of Failure of Conditions | 46 |
| 14.05 Filing of Notice of the Effective Date | 46 |
| ARTICLE XV – Modification, Revocation or Withdrawal of Plan | 46 |
| 15.01 Modification and Amendments | 46 |
| 15.02 Effect of Confirmation on Modifications | 47 |
| 15.03 Revocation or Withdrawal of the Plan | 47 |
| ARTICLE XVI – Jurisdiction | 47 |
| 16.01 Bankruptcy Court Jurisdiction | 47 |
| 16.02 Limitation on Jurisdiction | 49 |
| ARTICLE XVII – Miscellaneous | 49 |
| 17.01 Exemption from Taxes | 49 |
| 17.02 Compliance with Tax Requirements | 49 |
| 17.03 Defenses and Setoff | 50 |
| 17.04 Governing Law | 50 |

17.05 Successors and Assigns ........................................................................................... 51
17.06 Transfer of Claims ................................................................................................... 51
17.07 Post-Effective Date Service List .............................................................................. 51
17.08 Notices ................................................................................................................... 51
17.09 Immediate Binding Effect ......................................................................................... 52
17.10 Severability of Plan Provisions ................................................................................ 52
17.11 Exhibits ................................................................................................................... 52
17.12 Votes Solicited in Good Faith .................................................................................. 53
17.13 Conflicts ................................................................................................................. 53
17.14 U.S. Trustee Fees .................................................................................................... 53
17.15 Implementation ....................................................................................................... 53
17.16 No Admissions ........................................................................................................ 53

## DISCLAIMER

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

SEE ARTICLE VIII ENTITLED CERTAIN RISK FACTORS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, ENTITLED TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## INTRODUCTION

The Debtors propose this Combined Joint Disclosure Statement and Plan pursuant to sections 1125 and 1129 of the Bankruptcy Code.

This Combined Joint Disclosure Statement and Plan contemplates (1) the partial substantive consolidation of the ANS Debtors, (2) a global settlement between and among KeyBank, the Debtors, the Lorient Parties, the Continuum Entities, and the Settling Shareholders, (3) the formation of a Liquidation Trust to be the recipient for the assignment of the specified litigation claims as referred to hereinafter and remaining assets of the Debtors.

This Combined Joint Disclosure Statement and Plan contains, among other things, (i) a discussion of the Debtors' history and businesses, (ii) a summary of the events leading to these Chapter 11 Cases, (iii) a description of the events and motions in these Chapter 11 Cases, (iv) a summary of the agreed upon and proposed settlements between numerous parties, (v) certain risk factors, (vi) a summary and analysis of this Combined Joint Disclosure Statement and Plan, and (vii) certain other related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS AGAINST THE DEBTORS ARE ENCOURAGED TO READ THE COMBINED JOINT DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE COMBINED JOINT DISCLOSURE STATEMENT AND PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

THE DEBTORS ARE THE PLAN PROPONENTS.   THE PLAN PROPONENTS URGE ALL HOLDERS OF IMPAIRED CLAIMS TO VOTE IN FAVOR OF THE PLAN.

## ARTICLE I
## DEFINITION AND CONSTRUCTION OF TERMS

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, (i) capitalized terms used herein shall have the meanings ascribed to them on **Exhibit A** (ii) any capitalized terms used in this Combined Disclosure Statement and Plan that are not defined herein or in **Exhibit A**, but are defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to those terms in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (iii) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neuter, (iv) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (v) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (vi) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (vii) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Combined Joint Disclosure Statement and Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (viii) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions or the interpretation of the Plan hereof , and (ix) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## ARTICLE II
## BACKGROUND

### 2.01  General Background

(a)  The Debtors' History and Organizational Structure

Debtor ANS was a medical practice serving patients in the Northern and Central New Jersey area for many years. Debtor ANS is a professional association formed pursuant to the laws of the State of New Jersey. Debtor Newco is an entity originally formed to assume by assignment the assets and obligations of Debtor ANS in 2021, but the transition from Debtor ANS to Debtor Newco was not completed. Debtor Newco employed certain of the clinical employees at the practice. Debtor Newco is a limited liability company organized pursuant to the laws of the State of New Jersey. The ANS Debtors had their most recent main office at 60A Columbia Road, Morristown, New Jersey. Subsequent to the filing of the bankruptcy petitions, the ANS Debtors no longer occupy the Morristown offices.

As of the Petition Date, and as noted, the shares and membership interests in Debtor ANS and Debtor Newco, respectively, are owned by ANS Founders. ANS Founders is owned in equal shares by the Shareholders, who are eight (8) practicing physicians.

### (b)  The Lorient Transaction

In 2017, the ANS Debtors entered into a transaction with Lorient, pursuant to which Debtor ANS and the Shareholders formed ANS Continuum and Lorient formed CIA. CIA purchased a 40% interest in ANS Continuum for approximately $33 million plus a subordinated promissory note from CIA for $6 million, which was subsequently distributed to ANS Founders. Debtor ANS retained a 59% interest in ANS Continuum and 1% of ANS Continuum was retained by the Shareholders. The subordinated note held by ANS Founders is in default. The approximate balance outstanding is $4 million. Based upon information received from CIA, it is believed that CIA has no assets. The subordinated note is subordinated to payments and obligations owed by CIA to KeyBank on account of the CIA loan from KeyBank that partially funded this transaction.

ANS Continuum and Debtor ANS entered into a long-term management agreement (the Exclusive Management Agreement) dated October 11, 2017, pursuant to which ANS Continuum agreed to provide long term managerial services to Debtor ANS for a  management fee. To fund the acquisition of its interest in ANS Continuum, CIA borrowed $35 million from KeyBank. The loan was guaranteed by ANS Continuum. CIA pledged its interest in ANS Continuum to KeyBank as collateral for the loan. Neither Debtor ANS nor the Shareholders were borrowers or guarantors of the loan from KeyBank to CIA.

On or about January 10, 2019, KeyBank funded an additional loan in the amount of $3,500,000 to Florham Park which is owned 100% by ANS Continuum. Florham Park used the loan proceeds to purchase Debtor Hanover Hills which owns a license issued by the New Jersey Department of Health to operate a surgery center in Florham Park, New Jersey. Debtor Hanover Hills leases the premises where the surgery center is located from Hanover Associates LLC (an unrelated company). The surgery center is closed, and the Lease is in default.

Other than some equipment financing, neither Debtor ANS nor Debtor Newco has any secured debt. KeyBank asserts that it is the holder of accrued and unpaid management fees under the Exclusive Management Agreement alleged to be owed by Debtor ANS to ANS Continuum in the approximate amount of $20,000,000. In its Statement of Assets and Liabilities filed on July 2, 2024, Debtor ANS listed its assets at $6,026,030 and unsecured liabilities at $22,568,480 with priority claims at $3,678. The ANS Debtors' primary assets as of the Petition Date were cash in banks and accounts receivable in the aggregate $9,110,175. In addition, it owns an interest in ANS Continuum (valued at zero) and litigation claims which value is undetermined. A description of the values of the assets and liabilities as of the Petition Date are set forth in the Statement of Assets and Liabilities [Docket No. 63].

In its Statement of Assets and Liabilities [Docket No. 37], Debtor Newco listed assets at $4,626,

unsecured claims at $20,618,892 (inclusive of the $20,000,000 claim alleged to be held by KeyBank), and priority claims consisting of employee claims at $141,408. Other than the priority claims of employees, the unsecured claims in the Newco case are substantially duplicative of the claims listed in the Debtor ANS case.

Finally, The Debtors and the Insureds under the various policies of insurance in effect have provided notice to the insurance carriers of multiple claims against the Insureds and requested insurance coverage from the insurance carriers. To date despite the notices and requests for insurance coverage the insurance carriers have not responded. In light of the absence of a response from the insurance carriers and given the critical timing of the filing of this Plan, the Debtors and the Insureds have taken such reasonable steps as are appropriate to protect the rights of the Debtors and the Insureds as well as the interests of the insurance carriers.

### (c)    Capital Structure of Debtor Hanover Hills

Debtor Hanover Hills owns a license to conduct surgeries at its location in Florham Park, New Jersey, as issued by the New Jersey Department of Health, and the Lease to the premises from Hanover Associates LLC. The Landlord is an unrelated entity. The surgery center is not operating, and the Lease is in default. As set forth in the Summary of Assets and Liabilities filed on August 16, 2024 [Docket No. 130], the assets of Debtor Hanover Hills are scheduled at $817,050 with the value of the license being undetermined, alleged secured claims at $29,257,747 (KeyBank) and unsecured claims of $3,704,596.

### ARTICLE III
### EVENTS GIVING RISE TO THESE CHAPTER 11 CASES

The Debtors had been negotiating with KeyBank, the Lorient Parties and the Continuum Entities in an effort to resolve outstanding issues.  KeyBank was included in the negotiations because CIA was its borrower, and ANS Continuum was the guarantor of KeyBank's loan to CIA. When the ANS Debtors finally stopped paying the management fees to ANS Continuum in October 2022, CIA stopped making payments to KeyBank. The negotiations between KeyBank, the Lorient Parties, the Continuum Entities and the Debtors reached a standstill in late 2023. On April 6, 2024, KeyBank filed an Order to Show Cause together with a complaint seeking the appointment of a receiver for the ANS Debtors. The Complaint was filed in the Superior Court of New Jersey, Morris County [Docket # MRS-C-000029-24].  On June 5, 2024, prior to the return date of the hearing scheduled for the receivership application, the ANS Debtors each filed chapter 11 petitions.

### ARTICLE IV
### CERTAIN PROCEEDINGS AND MOTIONS IN THESE CHAPTER 11 CASES

### a.    The Debtors' Bankruptcy Filings and First Day Motions

On June 5, 2024, each of the ANS Debtors filed a voluntary chapter 11 bankruptcy petition. On June 7, 2024 the ANS Debtors filed a number of "first day" motions together with an application for an expedited hearing, including (i) a motion for continued use of its cash management systems and bank accounts [Docket No. 9], (ii) a motion to appoint Epiq as noticing and claims agent for the jointly administered cases [Docket

No. 14], (iii) a motion for joint administration [Docket No. 11], (iv) a motion to retain Thomas Buck as Chief Restructuring Officer of the ANS Debtors [Docket No. 12], (v) a motion for an extension of time to file schedules [Docket No. 13], and (vi) a motion for authority to pay insurance premiums and to assume and continue under existing insurance policies  [Docket No. 10]  (collectively, the "First Day Motions"). Subsequent motions have also been filed in the cases.

(1)     The Bankruptcy Court granted each of the First Day Motions on an interim or final basis, as applicable, and the First Day Motions previously approved on an interim basis were subsequently approved on a final basis.

(2)     On June 27, 2024, the Bankruptcy Court entered an order excusing the ANS Debtors from complying with the requirement that a patient ombudsman be appointed in this matter [Docket No. 56].

(3)     On June 27, 2024, pursuant to section 1102(a) of the Bankruptcy Code, the Office of United States Trustee filed a *Notice of Appointment of Official Committee of Unsecured Creditors* (the "Appointment Notice") [Docket No. 54], appointing the following members to the Committee: (i) KeyBank, (ii) Dr. Richard P. Winne Jr., (iii) Dr. Gautam Malhotra, (iv) NeuroPoint Alliance, and (v) Dr. Igor Ugorec. On August 6, 20204, the Office of United States Trustee filed and amendment of the Appointment Notice to add Eastman Management Corp. as a member of the Committee [Docket No. 111].

(4)     On July 2, 2024, the ANS Debtors filed their schedules of assets and liabilities and their statement of financial affairs [Docket Nos. 62 and 63, 24-15727 Docket Nos. 38 and 39].

(5)     On July 9, 2024, the Bankruptcy Court entered an order approving the ANS Debtors' motion to reject certain executory contracts, including but not limited to the Exclusive Management Agreement with ANS Continuum [Docket No. 67].

(6)     On July 12, 2024, Debtor Hanover Hills filed its Chapter 11 petition in the Bankruptcy Court, Case (Chapter 11 Case 24-16995 (VFP)) as a related case to the ANS Debtors. The ANS Debtors cases and the case of Debtor Hanover Hills are jointly administered. Debtor Hanover Hills has retained the Bloom Organization to market its assets for sale. As of the date of this Combined Joint Disclosure Statement and Plan, Debtor Hanover Hills has negotiated a stalking horse agreement with AOP Holdings LLC for $3,000,000 subject to higher and better offers.

(7)     On July 18, 2024, the Bankruptcy Court entered an order granting the application of the ANS Debtors to employ Greenbaum Rowe Smith & Davis LLP as ANS Debtors' counsel [Docket No. 76].

(8)     On July 19, 2024, the Bankruptcy Court entered an order granting the application of the ANS Debtors to retain Epstein Becker & Green PC as special counsel to the ANS Debtors [Docket No. 78].

(9)      The U.S. Trustee conducted the ANS Debtors' section 341(a) meeting on July 19, 2024, and the Hanover Hills 341(a) meeting on September 21, 2024.

(10)    On August 14, 2024, the Bankruptcy Court entered an order authorizing the Debtors' retention of ordinary course professionals [Docket No. 127].

(11)    On August 16, 2024, Debtor Hanover Hills filed its schedules of assets and liabilities and statement of financial affairs [Docket Nos. 130 and 131].

(12)    On August 27, 2024, the Bankruptcy Court entered the Bar Date Order which, among other relief, established the Bar Dates for Creditors to file Claims, including (a) the General Bar Date for all Debtors of October 3, 2024 at 4:00 pm EST, (b) the Governmental Unit Bar Date of December 2, 2024 at 4:00 pm EST for the ANS Debtors, and (c) the Government Bar Date of January 8, 2024 at 4:00 pm EST for Debtor Hanover Hills. Notice of the Bar Dates was provided in accordance with the Bar Date Order.

(13)    On September 4, 2024, the Bankruptcy Court entered an interim order authorizing the ANS Debtors to make certain postpetition financing loans to Debtor Hanover Hills and permitting Debtor Hanover Hills to use the cash collateral of KeyBank [Docket No. 169].

(14)    On September 12, 2024, the Bankruptcy Court entered an order authorizing the ANS Debtors to purchase replacement D&O insurance for the benefit of the members of the Debtors' governing boards at a cost of no more than $55,000 [Docket No. 185]. On or about September 20, 2024, the Debtors replaced the existing policy of D&O insurance for the benefit of the directors and officers of the Debtors and ANS Continuum.

**b.**    **The Debtors' Post-Petition Operations**

Since the Petition Date, the Debtors have continued to manage their assets in liquidation. Tom Buck, the CRO, oversees the day-to-day affairs of the Debtors, including the collection of accounts receivable, the liquidation of assets and maintenance of insurance, and provides such additional services as are requested by the Debtors' governing boards.

## ARTICLE V
## THE PROPOSALS FOR A GLOBAL SETTLEMENT OF ALL CLAIMS

This section of the Combined Joint Plan and Disclosure Statement describes the various discussions between the parties including the Debtors, the Shareholders, KeyBank, the Lorient Parties, the Continuum Entities and, after its formation, the Committee in an effort to reach a global settlement.

a.    The statements of financial affairs filed by the ANS Debtors cases identify certain avoidance claims arising within the year prior to the Petition Date against the Shareholders with respect to certain distributions while the ANS Debtors may have been insolvent. The Committee investigated these and additional transfers of distributions made by the ANS Debtors to the Shareholders within four (4) years prior

to the Petition Date. The Committee also investigated payments to or for the benefit of ANS Continuum on account of management service fees, and it appears that the last payments were in August 2022. The Committee has taken the position that the distributions made during the four (4) year period prior to the Petition Date constitute avoidable dividends, but the Shareholders contest such characterization and assert that the distributions were part of each Shareholders' reasonable compensation.

b.      In addition to the claims for avoidance of the four-year distributions to the Shareholders, the Committee's investigation indicated other potential causes of actions against each of the Shareholders individually and against certain of the Shareholders as directors and officers. The Committee described these potential causes of action in its demand letter to the Debtor dated August 15, 2024, as supplemented by letter dated August 28, 2024. These claims against the Shareholders, as alleged by the Committee, include: (i) actual and constructive fraudulent transfers for dividend payments to the Shareholders totaling in excess of $16 million; (ii) actual and constructive fraudulent transfers of the Debtors' business assets to the Shareholders' new practices; (iii) tortious interference with the Debtors' contractual relationships with the Shareholders and the associate doctors; (iv) mere continuation of the Shareholders' new practices through continuity of management, personnel, geographic location, assets and general business operations; and (v) breach of the Shareholders' employment/non-compete agreements. With respect to the Debtors' directors and officers, the Committee alleged their breach of fiduciary duty by assisting and participating with the Shareholders' alleged conduct and by taking no action for the Debtors to protect and enforce the Debtors' rights as to the Shareholders' alleged actions.

c.      In its complaint filed in the Superior Court of New Jersey, Morris County, filed on April 6, 2024, KeyBank, as the alleged transferee/assignee of claims originally held by the Lorient Parties and/or the Continuum Entities, alleged that the ANS Debtors, as well as the directors and officers thereof, had breached contractual obligations and other representations involving additional breaches of fiduciary obligations pertaining, among other things, to the failure to pay the management fees to ANS Continuum in accordance with the Management Agreement. KeyBank alleges that the damages arising from such breaches aggregate in excess of $20,000,000.

d.      The claims asserted by the ANS Debtors, the Committee, the Lorient Parties, the Continuum Entities and KeyBank recited in paragraphs a, b, and c above are disputed by the Shareholders in their individual capacity and (as applicable) directors and officers of the Debtors.  The Shareholders have advised the Debtors through counsel that absent a settlement they will vigorously defend the allegations against them.

e.      In an effort to avoid the expenditure of substantial time and assets of the Estates pursuing the claims against the Shareholders and defending claims brought by them the Debtors, KeyBank, the Lorient Parties and the Continuum Entities negotiated a non-binding settlement term sheet dated June 28, 2024 with certain Shareholders. In summary, this non-binding term sheet provided the following material terms:

1.    The six Settling Shareholders would contribute $2,800,000 in settlement proceeds to be allocated 50-50 between the Estates and KeyBank. Drs. Ron Benitez, Kyle Chapple, Jonathan Baskin and Yaron Moshel were to contribute $500,000 each, Jay Chun and John Knightly were to contribute $400,000 each.

2.  The ANS Debtors shall cooperate with KeyBank to bring about the chapter 11 filing of Hanover Hills and the marketing and sale of the assets of Hanover Hills. The gross proceeds of the sale of the Hanover Hills assets shall be allocated as follows: (i) to the costs of sale including payment to the Bloom Organization in accordance with its court approved retention, (ii) to the repayment to the ANS Debtors of Bankruptcy Court approved loans by the ANS Debtors to Debtor Hanover Hills by way of post-petition financing as approved by the Bankruptcy Court, (iii) to pay the allowed administrative expenses of Hanover Hills, (iv) to KeyBank on account of its allowed secured claim against the assets of Debtor Hanover Hills, and (v) to the allowed claims of the general unsecured creditors of Debtor Hanover Hills.

3.  The Lorient Parties and the Continuum Entities shall confirm that they have transferred and assigned all of their claims against the Debtors, ANS Founders and the Shareholders to KeyBank, and neither the Lorient Parties nor the Continuum Entities shall file any claims against any of the Debtors in any of the Chapter 11 Cases or otherwise against ANS Founders and the Shareholders.

4.  The two (2) remaining non-Settling Shareholders could join the settlement by contributing $625,000 each to KeyBank.

5.  The Settling Shareholders shall receive, provided that they each fulfill their respective commitments to fund their share of the $2,800,000, full and absolute releases from KeyBank, the Estates, the Lorient Parties and the Continuum Entities as part of an order confirming the Debtors' plan of liquidation.

6.  The Plan of liquidation would provide for distribution to KeyBank on the effective date in the amount of $1,400,000.

7.  Provided that KeyBank receives its allowed claim against the proceeds of the sale of the assets of Hanover Hills, KeyBank will release the Lorient Parties and the Continuum Entities from any liability pertaining to the KeyBank loans.

8.  Provided that the Debtors' plan complies with the terms of the settlement, KeyBank, the Lorient Parties and the Continuum Entities in each case if entitled to vote will vote in favor of the plan.

f.    This non-binding settlement term sheet also had deadlines for the parties to execute a settlement agreement and to seek Bankruptcy Court approval of such settlement agreement; however, these deadlines have lapsed and, to date, the parties to the non-binding settlement term sheet have not executed a settlement agreement consistent therewith or sought court approval of such settlement agreement.

g.    The Committee, upon review of the non-binding settlement term sheet, expressed its objections thereto and asked the Debtors to either include the Committee in settlement negotiations or to move forward with seeking approval of the settlement in line with the terms of the non-binding settlement

term sheet.

h.      Weeks lapsed, and the Committee on August 15 and 28, 2024 served its demand letter on the Debtors to make a timely claim under the D&O Liability Insurance Policy (issued in the amount of $5,000,000 for loss plus $1,000,000 for non-indemnified loss). Further weeks lapsed, during which time the Debtors and Committee discussed potential ways to move this case forward for the benefit of all stakeholders.

**ARTICLE VI**
**CONFIRMATION PROCEDURES**

### 6.01    Confirmation Procedures

The Debtors shall file an application for the conditional approval of the Combined Joint Disclosure Statement and Plan (the "Solicitation Procedures Motion").

Among other things, the Solicitation Procedures Motion will seek an order approving the adequacy of the disclosures in this Combined Joint Disclosure Statement and Plan on an interim basis and setting certain deadlines for the solicitation of the Plan, voting on the Plan, filing objections to the Plan, and a hearing to consider approval of the Plan. The Confirmation Hearing will be scheduled for at the Bankruptcy Court to consider (a) final approval of the Combined Joint Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Plan Proponents without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court. The Plan Proponents may file supplements or modifications to the Plan as they deem appropriate without delaying or extending the scheduled hearing dates.

### 6.02    Procedure for Objections

Any objection to final approval of the Combined Joint Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or Confirmation of the Plan must be made in writing and Filed with the Bankruptcy Court and served on the following parties so as to be actually received at least seven (7) days prior to the date set for the Confirmation Hearing upon (i) counsel to the ANS Debtors, Greenbaum Rowe Smith & Davis LLP, Attention: David L Bruck, Esq., dbruck@greenbaumlaw.com; (ii) counsel for the Committee, Faegre Drinker Biddle & Reath LLP, Attention: Richard Bernard, Esq. and Frank Velocci, Esq.; (iii) the Office of the United States Trustee, Attention: Fran Steele, Esq. and Peter D'Auria, Esq.; (iv) counsel to Debtor Hanover Hills, Fox Rothschild LLP, Attention: Joseph DiPasquale, Esq and Michael Herz, Esq., and (v) counsel to KeyBank, Duane Morris LLP, Attention: Morris Bauer, Esq.  Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

10

**6.03    Requirements for Confirmation**

The Bankruptcy Court will confirm the Plan only if the Plan meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among other requirements, the Plan (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against and be "fair and equitable" with respect to, such Class; and (b) must be feasible. The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

**6.04    Classification of Claims and Interests**

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified). The Plan Proponents also are required, under section 1122 of the Bankruptcy Code, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Plan Proponents believe that the Plan complies with such standards. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the Holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been paid, released or otherwise settled prior to the Effective Date. The Plan Proponents believe that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a Holder of a Claim or Interest may challenge the Plan Proponents' classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If such a situation develops, the Debtors intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its Confirmation. Any such reclassification could adversely affect Holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM OR INTEREST AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM OR INTEREST REGARDLESS OF THE CLASS AS

TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distribution received by Creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Plan Proponents' views as of the date hereof only.

The classification of Claims and Interests and the nature of Distributions to members of each Class are summarized herein. The Plan Proponents believe that the consideration, if any, provided under the Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual or judicial subordination) of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

### 6.05    Impaired Claims or Interests

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable or contractual rights are changed under such plan. In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected such plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, Holders of Claims in Classes are Impaired and are entitled to vote on the Plan. Under the Plan, Intercompany Claims in Class and Holders of Interests in Class 8 are Impaired and will not receive or retain any property under the Plan on account of such Interests and, therefore, are not entitled to vote on the Plan and are deemed to reject the Plan. Under the Plan, Holders of Claims in Classes, and are Unimpaired and, therefore, not entitled to vote on the Plan and are deemed to accept the Plan.

ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 2, 3, 4, AND 5.

### 6.06    Confirmation Without Necessary Acceptances; Cramdown

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired

classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. Here, because Holders of Claims and Interests in Classes and are deemed to reject the Plan, the Plan Proponents will seek confirmation of the Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. The Plan Proponents believe that such requirements are satisfied, as no Holder of a Claim or Interest junior to those in Classes and respectively, will receive or retain any property under the Plan

A plan does not "discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Plan Proponents believe that, under the Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class. Accordingly, the Plan Proponents believe that the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." In order to determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

   a.   <u>Secured Creditors</u>. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as otherwise set forth herein.

   b.   <u>Unsecured Creditors</u>. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

   c.   <u>Equity Interests</u>. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan. As discussed above, the Plan Proponents believe that the Distributions provided under the Plan satisfy the absolute priority rule described above, where required.

### 6.07    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan will not likely be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan). Because the Plan as proposed is a plan of liquidation the Plan meets the feasibility requirements of the Bankruptcy Code.

### 6.08    Best Interests Test and Liquidation Analysis

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code. To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to chapter 7 cases under the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtors' unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the Distributions to be received by such parties under the Plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class. *A* **Liquidation Analysis** will be provided by way of Plan Supplement prior to the scheduled hearing on Confirmation of the Plan.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. However, the Plan Proponents believe that in a chapter 7 liquidation, there would be additional time and delays caused by litigation, uncertainty as is involved in litigation costs and expenses that the Estates would incur as a result of the litigation and liquidating the Estates in chapter 7. The costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the Chapter 7 trustee.

The litigation would take an extended amount of time to bring to conclusion and as with all litigation success is not guaranteed. The directors and officers of the Debtors and the shareholders have all retained counsel and are prepared to defend vigorously the claims in the litigation.

The Plan Proponents believe the cost of the litigation will far exceed the expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors as proposed in this Plan. Moreover, if the Plan is confirmed as proposed distribution to stakeholders will be accomplished in a matter

of months not years as will be the case in chapter 7.

The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during these Chapter 11 Cases (such as compensation for Professionals) that are allowed in the chapter 7 case. Conversion also would as stated delay the liquidation process and ultimate distribution of whatever value remains in the Estates.  Under the Plan, estimated recoveries to Holders of Allowed General Unsecured Claims are approximately,10% whereas under a chapter 7 case, estimated recoveries for such parties are speculative and are estimated at 0%.

Accordingly, the Plan Proponents believe that Holders of Allowed Claims would receive less than anticipated under the Plan if these Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, and therefore, the requirements of Section 1129(a)(7) of the Bankruptcy Code have been satisfied.

**6.09    Acceptance of the Plan**

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of ballots are set forth in the Solicitation Procedures Order. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one Impaired Voting Class, excluding the votes of Insiders, must actually vote to accept the Plan.

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY AND TO IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE HOLDER. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT OR YOU LOST YOUR BALLOT OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT COUNSEL TO THE ANS DEBTORS AT GREENBAUM ROWE SMITH & DAVIS LLP 99 WOOD AVENUE, ISELIN, NEW JERSEY 08830 OR BY EMAIL AT dbruck@greenbaumlaw.com. COUNSEL TO THE ANS DEBTORS WILL NOT, PROVIDE LEGAL ADVICE.

**ARTICLE VII**
**CLASSIFICATION OF CLAIMS AND INTERESTS AND EXPECTED RECOVERIES**

**7.01    Overview of Classification.**

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Interest qualifies within the description of that Class; and (ii) the Claim or Interest has not been paid, released, or otherwise compromised before the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Compensation Claims, and Priority Tax Claims are not classified under the Plan and are excluded from the following Classes.

**7.02**   **Identification and Treatment of Unclassified Claims**

   **(a)**   **Administrative Claims.**

On the Effective Date, each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtors as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

   (i)   Final Administrative Claims Bar Date.

Any Holders of an Administrative Claim accruing from the Petition Date through the Effective Date, other than Professional Fee Claims, shall File and serve on the Debtors a request for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before the Final Administrative Claims Bar Date. Any such Claim not Filed by the Final Administrative Claims Bar Date shall be deemed waived, and the Holder of such Claim shall be forever barred from receiving payment from the Debtors on account thereof. The notice of confirmation to be delivered pursuant to the Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Final Administrative Claims Bar Date and shall constitute notice of such Bar Date.

   (ii)   Bar Date for Applications for Professional Fees.

Professional Fee Claims are Administrative Claims and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date. If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of confirmation to be delivered pursuant to the Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Professional Fee Bar Date and shall constitute notice of such Bar Date.

   (iii)   Section 503(b)(9) Claims.

For the avoidance of doubt, (i) the deadline for Filing requests for payment of 503(b)(9) Claims was the General Bar Date and (ii) the deadline for Filing requests for payment of Administrative Claims that arose between the Petition Date through the Effective Date is the Initial Administrative Claim Bar Date, and neither deadline is extended by this Plan or the Confirmation Order.

   **(b)**   **U.S. Trustee Fees.**

All U.S. Trustee Fees payable on or before the Effective Date shall be paid by the Debtors on or before the Effective Date. After the Effective Date, the Liquidation Trustee will File with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Liquidation Trustee will pay post-Effective Date quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6)

(c)    **Priority Tax Claims.**

On the Effective Date, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; (b) payment in accordance with 11 U.S.C. § 1129(a)(9)(C); or (c) such other treatment as to which the Debtors and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

(d)    **Ordinary Course Liabilities.**

All Ordinary Course Liabilities are deemed to be Allowed Claims to the extent supported by an invoice and any other appropriate documentation and not disputed by the Debtors prior to the Effective Date. Holders of Administrative Claims on account of Ordinary Course Liabilities are not required to File or serve any request for payment of the Ordinary Course Liability. To the extent applicable, the Debtors shall continue to pay each Ordinary Course Liability accrued prior to the Effective Date, pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability.

### 7.03    Identification and Treatment of Classes of Claims

(a) **Class 1: Priority Non-Tax Claims against the Debtors**

Each Holder of an Allowed Priority Non-Tax Claim against the Debtors shall receive on the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, either (A) Cash equal to the full unpaid amount of such Allowed Priority Non-Tax Claim, or (B) such other treatment as the Plan Proponents and the holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing. Such Claims are therefore unimpaired and not entitled to vote.

(b) **Class 2: General Unsecured Claims Excluding the General Unsecured Claims Held by KeyBank (and KeyBank Predecessor(s) in Interest) against the ANS Debtors**

Each Holder of an Allowed General Unsecured Claim in the Chapter 11 Cases of the ANS Debtors exclusive of KeyBank and the KeyBank Predecessor(s) in Interest shall receive a distribution of 10% of their Allowed General Unsecured Claims capped at an aggregate distribution in the amount of $200,000 plus a distribution limited only to a Pro Rata share of 10% of any [Net Recovery related to and funded solely by the D&O Liability Insurance Policy] (shared with Class 5 Claims). The ANS Debtor shall make one or more Distributions on account of such Allowed General Unsecured Claims to each Holder of such Allowed General Unsecured Claims on each Distribution Date (or the date on which such Claim becomes an Allowed General Unsecured Claim) on a Pro Rata basis. The Class 2 Claims are impaired and are entitled to vote.

(c) **Class 3: General Unsecured Claims Held by KeyBank (and KeyBank Predecessor(s) in Interest) against the ANS Debtors**

After satisfaction in full of all Administrative Expense Claims, Allowed Professional Fee Claims,

Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims, and payment of up to $200,000 and 10% Net Recovery related to and funded solely by the D&O Liability Insurance Policy to Holders of Class 2 Allowed General Unsecured Claims, KeyBank (as the KeyBank Predecessor(s) in Interest), shall receive remaining Assets of the ANS Debtors; *provided, however*, any such Distributions shall account for any reserves required by the Liquidation Trustee for the Liquidation Trust. The Class 3 Claim is impaired and entitled to vote on the Plan.

#### (d) Class 4: Secured Claim Held by KeyBank Against Debtor Hanover Hills

In satisfaction of the KeyBank Secured Claim against Debtor Hanover Hills, KeyBank shall receive the net available proceeds from the sale of the Assets of Debtor Hanover Hills (not to exceed the Allowed amount of its Secured Claim) after payment of the following: (1) payment of costs and expenses related to the sale closing in accordance with the terms of the sale, (2) payment of all Allowed Administrative Claims, including without limitation the post petition loans advanced by the ANS Debtors as approved by the Bankruptcy Court, and Allowed Professional Fee Claims in the Chapter 11 Case of Debtor Hanover Hills, and (3) a distribution of 10% to Allowed General Unsecured Claims against Debtor Hanover Hills up to the aggregate amount of $15,000 plus a distribution limited to a Pro Rata share of 10% of any Net Recovery related to and funded solely by the D&O Liability Insurance Policy.  The Class 4 Claim is impaired and is entitled to vote on the Plan.

#### (e) Class 5: General Unsecured Claims Against Debtor Hanover Hills

Each Holder of an Allowed General Unsecured Claim in the Chapter 11 Case of the Debtor Hanover Hills shall receive a distribution of 10% of their Allowed General Unsecured Claims capped at an aggregate distribution in the amount of $15,000 plus a distribution of a Pro Rata share of 10% of any net recovery related to the D&O Liability Insurance Policy (shared with Class 2 Claims).  Debtor Hannover Hills shall make one or more Distributions on account of such Allowed General Unsecured Claims to each Holder of such Allowed General Unsecured Claims on each Distribution Date (or the date on which such Claim becomes an Allowed General Unsecured Claim) on a Pro Rata basis. The Class 5 Claims are impaired and are entitled to vote.

#### (f) Class 6: Intercompany Claims

On the Effective Date, all Intercompany Claims in Class 6 shall be deemed canceled, extinguished, and of no further force or effect.  Holders of Intercompany Claims in Class 6 shall not be entitled to receive or retain any property on account of such Class 6 Claims.  Accordingly, Class 6 Claims are impaired, deemed to reject the Plan, and are not entitled to vote.

#### (g) Class 7: Interests

On the Effective Date, all Interests shall be deemed canceled, extinguished, and of no further force or effect.  Holders of Interests shall not be entitled to receive or retain any property on account of such Class 4 Interests.  Accordingly, Class 7 Interests are impaired, deemed to reject the Plan, and are not entitled to vote.

For the avoidance of doubt, nothing in this Class 7 or elsewhere in the Plan shall prejudice or impair the rights of Shareholders under any of the Debtors' retirement plans, or the rights of Shareholders who served as directors or officers of the Debtors to seek to recover defense costs under the D&O Liability Insurance Policy and/or defense costs and indemnity payments under any professional liability insurance policies maintained by the Debtors or on their behalf.

### 7.04    Treatment of Classified Classes, Rights to Vote, and Estimated Distributions

The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including related to the amount of proofs of claims that are filed after the Bar Date, and the amount of Claims that exist after the claims reconciliation process. Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distributions received by Creditors. The projected recoveries are based on information available to the Plan Proponents as of the date hereof and reflect the Plan Proponents' best estimates as of the date hereof only. In addition to the cautionary notes and risk factors contained elsewhere in the Combined Joint Disclosure Statement and Plan, it is underscored that the Plan Proponents make no representation as to the accuracy of these recovery estimates. The Plan Proponents expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered). A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Combined Joint Disclosure Statement and Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is as otherwise set forth herein. The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class/Designation | Plan Treatment | Status | Estimated Claim Pool/Projected Recovery |
|---|---|---|---|
| Class 1: Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim against the Debtors shall receive on the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, either (A) Cash equal to the full unpaid amount of such Allowed Priority Non-Tax Claim, or (B) such other treatment as the Plan Proponents and the holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing. | Unimpaired; Not entitled to vote; Deemed to accept Plan | Approx. Amount: $141,000

Projected Recovery: 100% |
| Class 2: General Unsecured Claims Excluding the General Unsecured Claims Held by KeyBank (and KeyBank Predecessor(s) in Interest) against the ANS Debtors | Each Holder of an Allowed General Unsecured Claim in the Chapter 11 Cases of the ANS Debtors exclusive of KeyBank (and KeyBank Predecessor(s) in Interest) shall receive a distribution of 10% of their Allowed General Unsecured Claims capped at an aggregate distribution in the amount of $200,000 plus a distribution limited to a Pro Rata share of 10% of any net recovery related to and funded solely by the D&O Liability Insurance Policy (shared with Class 5 Claims).  The ANS Debtors shall make one or more Distributions on account of such Allowed General Unsecured Claims to each Holder of such Allowed General Unsecured Claims on each Distribution Date (or the date on which such Claim becomes an Allowed General Unsecured Claim) on a Pro Rata basis. | Impaired; Entitled to vote | Approximate Amount $2,000,000 Estimated Recovery: 10% |

| Class/Designation | Plan Treatment | Status | Estimated Claim Pool/Projected Recovery |
|---|---|---|---|
| Class 3: General Unsecured Claims Held by KeyBank (and KeyBank Predecessor(s) in Interest) against the ANS Debtors | After satisfaction in full of all Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims, and payment of up to $200,000 and 10% Net Recovery related to and funded solely by the D&O Liability Insurance Policy to Holders of Class 2 Allowed General Unsecured Claims, KeyBank (as the KeyBank Predecessor(s) in Interest), shall receive remaining Assets of the ANS Debtors; provided, however, any such Distributions shall account for any reserves required by the Liquidation Trustee for the Liquidation Trust. | Impaired; Entitled to vote | Approx. Amount: $20,000,000<br><br>Estimated Recovery: Unknown |
| Class 4: Secured Claim Held by KeyBank (and KeyBank Predecessor(s) in Interest) Against Debtor Hanover Hills | In satisfaction of the KeyBank Secured Claim against Debtor Hanover Hills, KeyBank (as the KeyBank Predecessor(s) in Interest) shall receive the net available proceeds from the sale of the Assets of Debtor Hanover Hills (not to exceed the Allowed amount of its Claim) after payment of the following: (1) payment of costs and expenses related to the sale closing in accordance with the terms of the sale, (2) payment of all Allowed Administrative Claims, including without limitation the postpetition loans advanced by the ANS Debtors as approved by the Bankruptcy Court, and Allowed Professional Fee Claims in the Chapter 11 Case of Debtor Hanover Hills, and (3) a distribution of 10% to Allowed General Unsecured Claims against Debtor Hanover Hills up to the aggregate amount of $15,000 plus a distribution limited to a Pro Rata share of 10% of any Net Recovery related to and funded solely by the D&O Liability Insurance Policy. | Impaired; Entitled to vote | Approx. Amount: TBD<br><br>Estimated Recovery: Unknown |

| Class/Designation | Plan Treatment | Status | Estimated Claim Pool/Projected Recovery |
|---|---|---|---|
| Class 5: Unsecured Claims Against Debtor Hanover Hills | Each Holder of an Allowed General Unsecured Claim in the Chapter 11 Case of the Debtor Hanover Hills shall receive a distribution of 10% of their Allowed General Unsecured Claims capped at an aggregate distribution in the amount of $15,000 plus a distribution limited to a Pro Rata share of 10% of any net recovery related to and funded solely by the D&O Liability Insurance Policy (shared with Class 2 Claims).  Debtor Hannover Hills shall make one or more Distributions on account of such Allowed General Unsecured Claims to each Holder of such Allowed General Unsecured Claims on each Distribution Date (or the date on which such Claim becomes an Allowed General Unsecured Claim) on a Pro Rata basis. The Class 5 Claims are impaired and are entitled to vote. | Impaired; Entitled to vote | Approx. Amount: TBD

Estimated Recovery: 10% |
| Class 6: Intercompany Claims | On the Effective Date, all Intercompany Claims in Class 6 shall be deemed canceled, extinguished, and of no further force or effect. Holders of Intercompany Claims in Class 6 shall not be entitled to receive or retain any property on account of such Class 6 Claims. Accordingly, Class 6 Claims are impaired, deemed to reject the Plan, and are not entitled to vote. | Impaired; Deemed rejected | N/A |

| Class/Designation | Plan Treatment | Status | Estimated Claim Pool/Projected Recovery |
|---|---|---|---|
| Class 7: Interests | On the Effective Date, all Interests shall be deemed canceled, extinguished, and of no further force or effect. Holders of Interests shall not be entitled to receive or retain any property on account of such Class 7 Interests. Accordingly, Class 7 Interests are impaired, deemed to reject the Plan, and are not entitled to vote. For the avoidance of doubt, nothing in this Class 7 or elsewhere in the Plan shall prejudice or impair the rights of Shareholders under any of the Debtors' retirement plans, or the rights of Shareholders who served as directors or officers of the Debtors to seek to recover defense costs under the D&O Liability Insurance Policy and/or defense costs and indemnity payments under any professional liability insurance policies maintained by the Debtors or on their behalf. | Impaired; Deemed rejected | N/A |

### 7.05    Controversy Concerning Classification, Impairment or Voting Rights

In the event a controversy or dispute should arise related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of these Chapter 11 Cases and (ii) any right to payment arising from an equitable remedy for breach of performance.

### 7.06    Insurance Recourse

Notwithstanding anything to the contrary herein, unless elected otherwise by the Plan Proponents or as the case may be, if any Allowed Claim is directly covered by an Insurance Policy, such Claim shall first be paid from the net proceeds of such Insurance Policy to the extent such proceeds are available, with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim. For the avoidance of doubt and notwithstanding any contrary, term, provision or condition of this Plan, this Section 7.06 shall apply to D&O Claims, except that D&O Claims shall only be recoverable on a non-recourse basis to the Insured Persons and/or any Shareholder only from any indemnity payments made

under the D&O Liability Insurance Policy.

## ARTICLE VIII
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 8.01    The Plan May Not Be Accepted

The Plan Proponents can make no assurances that the requisite acceptances to the Plan will be received, and the Plan Proponents may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Creditors as those proposed in the Plan.

### 8.02    The Plan May Not Be Confirmed

Even if the Plan Proponents receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.  Even if the Bankruptcy Court determined that the Combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met. Moreover, there can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation.

### 8.03    Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for Distribution to such Class may differ from the Plan Proponents' estimates. If the total amount of Allowed Claims in a Class is higher than the Plan Proponents' estimates, or the funds available for

Distribution to such Class are lower than the Plan Proponents' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

### 8.04     Objections to Classification of Claims

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Plan Proponents believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Plan Proponents will seek to (i) modify the Plan to provide for whatever classification might be required for confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires re-solicitation, the Plan Proponents will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Plan Proponents believe that under the Bankruptcy Rules, it would be required to re-solicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder. The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Plan Proponents believe that the Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and Consummation of the Plan and could increase the risk that the Plan will not be consummated.

### 8.05     Failure to Consummate the Plan

The Plan provides for certain conditions that must be satisfied (or waived) prior to confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will be consummated.

### 8.06     Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan

There can be no assurance that the estimated Claim amounts set forth in the Plan are correct, and the actual Allowed amounts of Claims may differ from the estimates. The estimated amounts are based on certain

assumptions with respect to a variety of factors, including with respect to any Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims. Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein, thereby materially reducing the recovery to the Holders of Allowed General Unsecured Claims and Allowed Secured Claims under the Plan.

### 8.07    Certain Tax Considerations

There are a number of material income tax considerations, risks and uncertainties associated with the plan of liquidation of the Debtors described in this Combined Disclosure Statement and Plan.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## ARTICLE IX
## THE LIQUIDATION TRUST

### 9.01    Liquidation Trust

The Liquidation Trust Agreement, attached hereto as **Exhibit C**, or as may be amended or revised prior to entry of the Confirmation Order, is incorporated into and made a part of this Combined Joint Disclosure Statement and Plan.

### 9.02    Establishment and Purpose of the Liquidation Trust

On or before the Effective Date, the Debtors and the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall have established the Liquidation Trust pursuant to the Plan. The Liquidation Trust shall be established for the primary purpose of liquidation and distributing the assets transferred to it, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

### 9.03    Authority and Role of the Liquidation Trustee

The authority and role of the Liquidation Trustee shall be in accordance with the provisions of the Liquidation Trust Agreement and the Plan.  In furtherance of and consistent with the purpose of the Liquidation Trust Agreement and the Plan, solely for the purpose of carrying out the Plan and discharging the duties in the Liquidation Trust Agreement, the Liquidation Trustee shall be, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable State corporate law, appointed as the representative of the Estates for the retention, enforcement, settlement, or adjustment of the claims and rights, known and unknown, and the interests belonging to the Debtors or their Estates, which arose prior to the Effective Date, to the extent set

forth on Exhibit [_] to the Liquidation Trust Agreement (collectively, the "Assigned Rights and Claims").

### 9.04   Appointment of the Liquidation Trustee

The appointment of [Name] as Liquidation Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.  In accordance with the Liquidation Trust Agreement, the Liquidation Trustee shall serve in such capacity through the earlier of (i) the date that the Liquidation Trust is dissolved in accordance with the Liquidation Trust Agreement or (ii) the date such Liquidation Trustee resigns, is terminated, or is otherwise unable to serve; provided, however, that, in the event that the Liquidation Trustee resigns, is terminated, or is unable to serve, then the Court, upon motion of any party-in-interest, including, but not limited to, counsel to the Liquidation Trust, shall approve a successor to serve as the Liquidation Trustee, and such successor Liquidation Trustee shall serve in such capacity until the Liquidation Trust is dissolved.

### 9.05   Liquidation Trust Assets

On the Effective Date, the Liquidation Trust Assets shall vest automatically in the Liquidation Trust. The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief. Upon vesting of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtors' right title and interest in the Liquidating Trust Assets which comprise the Assigned Rights and Claims transferred to the Liquidation Trust as set forth in Exhibit [ ] to the Liquidation Trust Agreement free and clear of all liens, claims and encumbrances and the Debtors shall have no further interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust.

### 9.06   Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor-in-Interest

In accordance with Treas. Reg. § 301.7701-4(d), the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely Distributions pursuant to the Plan, and not unduly prolong its duration. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidation Trust Agreement.

### (a)   Liquidation Trust as a "Grantor Trust."

The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Claims of the Liquidation Trust Beneficiaries entitled to Distributions from the Liquidation Trust Assets, followed by a transfer by such Holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

(b)    **Valuation of Liquidation Trust Assets.**

As soon as reasonably practicable after the Effective Date, the Liquidation Trustee (to the extent that the Liquidation Trustee deems it necessary or appropriate in its absolute sole discretion) shall value the Liquidation Trust Assets based on the good faith determination of the value of such Liquidation Trust Assets. The valuation shall be used consistently by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all federal income tax purposes.   The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

(c)    **Liquidation Trustee's Right and Power to Invest.**

The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets transferred to the Liquidation Trust, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power to invest such Liquidation Trust Assets (pending distributions in accordance with the Plan) in accordance with the Liquidation Trust Agreement; *provided*, *however*, that the scope of any such Permissible Investments shall be limited to include only those investments that a "liquidation trust," within the meaning of Treas. Reg. § 301.7701- 4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

### 9.07    Responsibilities of the Liquidation Trustee

The responsibilities of the Liquidation Trustee shall include, but shall not be limited to:

(1)    the making of Distributions as contemplated herein;

(2)    establishing and maintaining the Reserves in accordance with the terms of the Plan;

(3)    conducting an analysis of the Assigned Rights and Claims and prosecuting objections thereto or settling or otherwise compromising such Assigned Rights and Claims if necessary and appropriate;

(4)    preparing and filing post-Effective Date operating reports for the Debtors;

(5)    filing appropriate tax returns with respect to the Liquidation Trust and Debtors and paying taxes properly payable by the Liquidation Trust and Debtors, if any, in the exercise of its fiduciary obligations;

(6)    taking such actions as are necessary to wind down and dissolve the Debtors under applicable law;

(7)    retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations;

(8)    taking such actions as are necessary and reasonable to carry out the purposes of the Liquidation Trust;

(9) pursuing the causes of action constituting the Assigned Rights and Claims transferred to the Liquidating Trust and set forth in Exhibit [ ] to the Liquidation Trust Agreement (collectively, the "<u>Causes of Action</u>");

(10) protecting and enforcing the rights to the Liquidation Trust Assets vested in the Liquidation Trustee by any method reasonably determined to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity; and

(11) terminating the Liquidation Trust and seeking to close the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.

### 9.08 Establishment of the Post-Confirmation Committee

On the Effective Date, the Post-Confirmation Committee, which shall consist of three (3) members, shall be formed to serve as an advisory board to the Liquidation Trustee.  The initial members of the Post-Confirmation Committee shall be: (i) ……., (ii) ……., and (iii) …… . The Post-Confirmation Committee shall have the rights and obligations set forth in the Plan and in the Liquidation Trust Agreement.  The Committee's decisions shall be made by an affirmative vote of a majority of its members with each member having one vote. The Post-Confirmation Committee shall have the responsibility to oversee and advise the Liquidation Trustee with respect to the liquidation and distribution of the Debtor's assets in accordance with the Plan, as specified below. A member of the Post-Confirmation Committee shall recuse him/herself from considering any matter in which he/she is not disinterested; provided, however, such member shall not be considered not disinterested solely as a result of such member's affiliation with or employment by the (i) Holder of a Claim or (ii) Debtors. The proposed members of the Post-Confirmation Committee are identified herein or will otherwise be identified in a supplement to the Plan. [Vacancies on the Post-Confirmation Committee shall be filled by a Person designated by the remaining member or members of the Post-Confirmation Committee from among the holders of General Unsecured Claims.] A majority of the Post-Confirmation Committee may remove or replace members of the Post-Confirmation Committee for cause, and any party-in-interest shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Post-Confirmation Committee for cause. Any successor appointed pursuant to this Section shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor. For the avoidance of doubt, no member of the Post-Confirmation Committee shall be compensated for serving as a member of the Post-Confirmation Committee except as provided in the Liquidation Trust Agreement; provided, however, that such members may be reimbursed by the Liquidation Trust, from funds in the Post-Effective Date Liquidation Trust Expense Reserve for documented reasonable out-of-pocket costs and expenses up to a cap of $1,000 per member. Beginning after the Effective Date, the Post-Confirmation Committee shall receive a quarterly report from the Liquidation Trustee showing receipts and disbursements, together with a narrative explanation regarding the activities of the Liquidation Trustee and any retained professionals.

The rights, powers and duties of the Post-Confirmation Committee shall be as follows:

(i) To terminate by majority vote in accordance with the Liquidating Trust Agreement, the Liquidation Trustee for cause, and upon such termination (or upon the resignation, death or incapacity of the Liquidation Trustee), appoint a successor Liquidation Trustee in accordance with the terms of the Plan;

(ii) Prior to the commencement of any litigation by the Liquidation Trustee the Liquidation Trustee shall present to the Post-Confirmation Committee a written description of the theory of liability and quantum of damages of the claims proposed to be asserted.  An affirmative vote of the Post-Confirmation Committee shall be required to authorize the commencement of litigation provided that, if authorization is obtained, prior to commencement of litigation the Liquidation Trustee shall mediate with the proposed defendants and the D&O Insurer before a mutually agreeable mediator or in the absence of such agreement, as designated by the Court (the "Mediation Action").  If the matter is not successfully resolved by mediation, the Liquidation Trustee shall be authorized to commence litigation If the potential expiration of an applicable statute of limitation prevents the completion of the [Mediation Obligation], the [Mediation Obligation] shall be suspended and, provided that the Post-Confirmation Committee has authorized an action, the Liquidation Trustee shall be authorized to commence such action provided further that the Liquidation Trustee has made an unsuccessful good faith effort to obtain a tolling of such statute of limitation.

(iii) To approve the settlement of any Cause of Action or dispute, for which the amount in controversy exceeds [$150,000];

(iv) To approve the allowance of any Disputed Claim if the proposed Allowed amount of such Claim exceeds [$150,000];

(v) To approve the sale of any assets by the Liquidation Trustee;

(vi) To approve any budget in connection with the administration of the Plan and the winding down of the Debtors' affairs prepared by the Liquidation Trustee at the request of the Post-Confirmation Committee;

(vii) To review and object to fees and expenses of professionals retained by the Liquidation Trustee on a quarterly basis and in accordance with the terms of the Plan and the Liquidating Trust Agreement; and

(viii) [To consider and, if appropriate, approve any action proposed by the Liquidation Trustee that is not specifically authorized by the Plan that would have a material effect upon the administration of the Estates and/or the Post-Effective Date Debtors or the Liquidation Trust, provided, however, nothing contained herein shall be

deemed to authorize the Liquidation Trustee to take any action that is inconsistent with the terms of the Plan or the Liquidation Trust.]

**9.09     Bankruptcy Court Approval of Liquidation Trustee Actions Not Required.**

[Unless otherwise specified herein or in the Liquidation Trust Agreement, the Liquidation Trustee need not obtain an order or approval of the Bankruptcy Court in the exercise of any power, right, or discretion conferred hereunder or in the Liquidation Trust Agreement, or account to the Bankruptcy Court, including, but not limited to, with respect settling, compromising, or otherwise resolving any Causes of Action or objections to Claims. The Liquidation Trustee shall exercise his business judgment for the benefit of the Estates' beneficiaries in order to maximize the value of the Assets and distributions, giving due regarding to the cost, risk, and delay of any course of action.]

**9.10     Expenses of the Liquidation Trust**

Fees and expenses incurred by the Liquidation Trustee shall be paid from the Liquidation Trust Expense Reserve.

**9.11     Compensation of the Liquidation Trustee**

The Liquidation Trustee shall be entitled to receive compensation for services rendered on behalf of the Liquidation Trust in the amount of $........... per month, payable on the first Business Day of each month, plus reimbursement of all reasonable, out-of-pocket expenses, until the date the Liquidation Trust is dissolved and terminated or by an order of the Bankruptcy Court. For the avoidance of doubt, all compensation of the Liquidation Trustee shall be a Liquidation Trust Expense.

**9.12     Fiduciary Duties of the Liquidation Trustee**

Pursuant to the Plan and the Liquidation Trust Agreement, the Liquidation Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims against the Debtors that will receive Distributions pursuant to the terms of the Plan.

**9.13     Transfer of Books and Records**

On the Effective Date, subject to any applicable privilege, the Debtors will transfer and assign, or cause to be transferred and assigned, to the Liquidation Trust related to the Liquidation Trust Assets, all of the books and records of the Debtors, including but not limited to a copy of the information on all the Debtors' servers and a copy of the Debtors' servers.

**9.14     Dissolution of the Liquidation Trust**

The Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date unless the Bankruptcy Court, upon a motion Filed prior to the fourth anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the

motion), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets. After (a) the final Distribution of the balance of the assets or proceeds of the Liquidation Trust pursuant to the Plan, (b) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, and (c) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

### 9.15   Full and Final Satisfaction against Liquidation Trust

On and after the Effective Date, the Liquidation Trust shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the Liquidation Trust Agreement.  All payments and all Distributions made by the Liquidation Trustee under the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Interests against the Released Parties, as applicable.

## ARTICLE X
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 10.01   Interests in the Debtors

Except as otherwise may be provided in the Plan, on or after the later of 60 days from the Effective Date or dissolution of the Debtors, the Interests in the Debtors shall be cancelled and of no force and effect.

### 10.02   Causes of Action

On the Effective Date, all Causes of Action constituting Assigned Rights and Claims as set forth in Exhibit [   ] to the Liquidation Trust Agreement shall be vested in and retained by the Liquidation Trust. Following the Effective Date, except as otherwise expressly provided herein, the Liquidation Trustee may assert, compromise or dispose of the preserved Causes of Action without further notice to Creditors or Interest Holders or authorization of the Bankruptcy Court.

### 10.03   Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, all Liens against the property of any Estates will be fully released, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against any net proceeds of sales of such assets. For the avoidance of doubt, except as otherwise provided in the Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

### 10.04   Vesting and Sale or Other Disposition of Assets; Representative of the Estates

Except as otherwise provided in this Combined Disclosure Statement and Plan, on the Effective Date, all property of the Debtors' Estates, shall be vested in the Liquidation Trust, free and clear of all Claims,

liens, charges, other encumbrances, Interests or other interests. On and after the Effective Date, the Liquidation Trustee may use, acquire and dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan or the Confirmation Order. The Liquidation Trustee, on and after the Effective Date, may conduct any sales or liquidations of assets on any terms it deems appropriate, without further order of the Bankruptcy Court, except as otherwise provided in the Plan, the Confirmation Order or the Liquidation Trust Agreement.

### 10.05    Effectuating Documents; Further Transactions

On and after the Effective Date, the Liquidation Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the transactions contemplated thereby, in each case, in the name of and on behalf of the Debtors and the Liquidation Trust, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

### 10.06    Deemed Partial Substantive Consolidation

The Plan contemplates and is predicated upon the deemed partial substantive consolidation of the Estates of the ANS Debtors for the limited purposes of voting, confirmation, and Distribution and for no other purposes. Accordingly, on the Effective Date, each Claim Filed or to be Filed against the ANS Debtors shall be deemed Filed only against Debtor ANS and shall be deemed a single Claim against and a single obligation of for Distribution purposes, which shall be paid from the Liquidation Trust. This deemed substantive consolidation of the Estates of the ANS Debtors for Distribution purposes means that the specific Debtor ANS or Debtor Newco against which a creditor holds or asserts a Claim or Interest will have no effect on the Distribution (if any) provided to such creditor under the Plan.

Absent the consent of affected creditors, the Debtors will bear the burden at the Confirmation Hearing of establishing a *prima facie* case for the deemed substantive consolidation of the ANS Debtors' respective Estates. Accordingly, the ANS Debtors will, to the extent necessary, adduce evidence at the Confirmation Hearing to justify the deemed substantive consolidation in accordance with the standards established by applicable case law. Such evidence may include, without limitation, evidence indicating that creditors have dealt with the ANS Debtors as a single, consolidated enterprise, both before and after the Petition Date, the ANS Debtors' centralized management, and the ANS Debtors' prepetition use of an integrated cash management system of bank accounts. In addition such evidence shall include testimony reflecting the incomplete attempt on the part of the ANS Debtors to effectuate an F Reorganization resulting in the creation of Debtor Newco. Since the formation of Debtor Newco, Debtor ANS continued to pay the obligations transferred to Debtor Newco. Further, if not consolidated the transfer of obligations from Debtor ANS to Debtor Newco without implementing the transfer of assets may constitute an avoidable transfer.

### 10.07    Global Settlement

The following comprises the terms of the Global Settlement by and between the Settling Shareholders, Debtors, Key Bank, the Lorient Parties and the Continuum Entities, which terms are

incorporated into and made a part of this Combined Joint Disclosure Statement and Plan.

1. To opt into the Global Settlement Jay Chun shall contribute $400,000.00 and each of the other Settling Shareholders shall contribute $400,000 or $500,000 (as may be applicable) as their respective contributions to the Bankruptcy Estates on or before one week prior to the entry of the Confirmation Order; and upon payment in full of such contribution, become Settling Shareholders. To opt into the settlement, Shareholders must submit an Opt – In Form and fund the settlement amount by wire transfer to the Trust Account of Debtor's counsel. Debtor's counsel shall notify all interested parties of the receipt of the settlement funds prior to the hearing on Confirmation. In the event that the Plan is not confirmed the settlement contributions will be immediately returned to the Settling Shareholders.

2. The contributions made by the Settling Shareholders shall be characterized for tax purposes as Counter Income or Return of Fees/Distributions previously directly or indirectly paid or funded by the ANS Debtors.

3. Each Settling Shareholder and his current Affiliated Medical Practice are released by the Debtors, the Lorient Parties, the Continuum Entities and KeyBank from all direct, indirect, derivative, statutory and other claims, including but not limited to all Assigned Rights and Claims, to the extent that such Settling Shareholder's liability exceeds the D&O Recovery. For a Settling Shareholder who was never a director or officer of the Debtors and insured as such under the D&O Liability Insurance Policy, the D&O Recovery shall for all purposes under this Plan be deemed to be $0.00. No D&O Claim shall be asserted against a Shareholder who was never a director or officer of the Debtors. D&O Claims may be asserted only against an Insured who served as a director or officer of the Debtors. For clarity, the D&O Liability Insurance Policy defines "Insureds" as "Insured Persons".

4. Each Settling Shareholder releases the Debtors and all claims against the Debtors, except for, as and to the extent applicable, (x) claims for which coverage is or would be afforded under the D&O Liability Insurance Policy or any other insurance policy under which the Settling Shareholders is an insured ( the Insureds), (y) the Settling Shareholders' rights as a participant in the Debtors' retirement plans and (z) the Settling Shareholders' entitlement to coverage under the Debtors' professional liability insurance policies as set forth in Section 7.06(g) above.

5. Each Settling Shareholder mutually releases each other and their current Affiliated Medical Practice for any direct, derivative, statutory and other claim related to the Debtors, ANS Founders, the Lorient Entities, the Continuum Entities and KeyBank which arose on or before December 15, 2023, but did not continue thereafter.

6. Each Settling Shareholder and his current Affiliated Medical Practice, the Debtors, the Lorient Parties, the Continuum Entities and KeyBank shall exchange mutual releases as to all issues relating to the Debtors and ANS Founders.

7. Subject to the provisions of Section 7.06 of this Plan, nothing in this settlement shall prejudice the ability of the Debtors, the Committee or the Liquidation Trustee to make, assert, prosecute and recover on claims for which coverage is or would be afforded under the D&O Liability Insurance

Policy, except that the prosecuting party agrees to seek pre-litigation mediation with the Insureds and D&O Insurer and will not seek a recovery in excess of the coverage under the D&O Liability Insurance Policy.

8.  In the event that the D&O Insurer denies coverage, the Debtors shall set aside an amount to be determined  for the pro rata payment of reasonable legal fees and expenses for the Settling Shareholders who are Insureds in their capacity as directors or officers of the Debtors with respect to a covered Claim under the D&O Liability Insurance Policy (the "D&O Reserve"). Upon exhaustion of the D&O Reserve, each Settling Shareholder shall be responsible to pay his legal fees and costs, which reasonable defense fees and costs shall be reimbursed on a pro rata basis as a first priority payment from and a surcharge on any D&O Recovery prior to allocation and distribution thereof to any party or professional under the Plan.

9.  If the D&O Insurer accepts coverage for defense fees and costs for the Insureds without a reservation of rights, then there will be no D&O Reserve.

10. The Confirmation Order must have become a Final Order.

11. All conditions precedent to the Effective Date, including but not limited to the exchange of mutually acceptable Releases, must have occurred. Releases must be exchanged as of the Effective Date of the Plan.

12. The Terms of the Global Settlement are and at all times shall remain subject to the terms of the Releases.

13. The partial substantive consolidation of the Debtors shall not prejudice, preclude or impair any defense that a Shareholder has or may have with respect to any Claim made against such Shareholder.

### 10.08    401K Matching Obligations

The ANS Debtors or Liquidation Trustee shall cause the allocation of overpayments to the Debtors' retirement plans during 2023 to satisfy the employee 401k matching obligations. The balance of any recovered overpayment shall remain in the Debtors' estates and be incorporated in any distribution of Assets of the Debtors' estate s under the Plan.

### 10.09    Records

On and after the Effective Date, subject to any applicable privilege which shall not be waived and shall be preserved (including for the benefit of the Liquidating Trust as set forth in section 7.10), all documents and records (which for purposes hereof, shall include all electronically stored information) of the Debtors, including a copy of the information contained on the Debtors' server, shall be transferred to the Liquidation Trust, which shall preserve and maintain all of the Debtors' documents and records according to practices and terms that it deems reasonable and appropriate in its sole and independent discretion, provided however, that all records relating to any Claims or Causes of Action, including but not limited to the Assigned Rights and Claims, shall be preserved.  Subject to the foregoing preservation provision, after such transfer,

the Debtors shall be granted access to such documents and records at reasonable dates, times and places. At any time following the Effective Date, the Liquidation Trustee shall be entitled to destroy any documents and records of the Debtors (a) following the filing of an appropriate notice with the Bankruptcy Court which shall be given to all parties who are to receive Releases setting forth the Liquidation Trustee's intent to destroy some or all of the Debtors' documents or records, without further order of the Bankruptcy Court, *provided that*, no objections are Filed to such notice on or before the twenty-first (21st) day following the filing of such notice, (b) upon entry of an order by the Bankruptcy Court authorizing the destruction of some or all of the Debtors' documents and records, or (c) upon dissolution of the Liquidation Trust without the need for further approval of the Bankruptcy Court.

### 10.10    Insurance Policies

#### a.  Insurance Policies

At the sole cost and expense of the Liquidation Trust, and in the sole discretion of the Liquidation Trustee up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date may remain in full force and effect according to their terms and the coverage obligations of the insurers and third-party administrators under such Insurance Policies as determined by the Liquidation Trustee hall continue following the Effective Date (including any obligations to pay, defend and process insured claims).

#### b.  Insurance Policies; Employment Practice Liability Policies; Professional Liability Policies; Similar Policies.

Nothing contained in this Combined Disclosure Statement and Plan shall affect or impair the rights of any Debtor and non-Debtor insured persons covered under any Insurance Policy, which expressly includes any director and officer, employment practices, or similar liability Insurance Policies (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

### 10.11    Dissolution of Committee

On the Effective Date, the Committee shall be dissolved, and the members of the Committee shall be released and discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, these Chapter 11 Cases, except with respect to the limited purpose of preparing and prosecuting applications for the payment of fees and reimbursement of expenses incurred by the Committee or its respective Professionals that accrued prior to dissolution of the Committee.

### 10.12    Transfer of Privilege/No Waiver

On the Effective Date, all the Debtors' evidentiary privileges, including the attorney/client privilege, shall be deemed transferred to the Liquidation Trust. The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief. Upon such transfer, except as otherwise provided by applicable law, the Debtors and the Estates shall have no other further rights or obligations with respect thereto. Nothing herein shall be deemed a waiver of the Debtors' or the Estates' rights of privilege.

**10.13**      **Final Decree**

At any time following the Effective Date, the Liquidation Trustee shall be authorized to File a motion for entry of a final decree closing any or all of the Chapter 11 cases.

**10.14**      **Winddown Debtor ANS**

After the Effective Date, the Liquidation Trustee shall take such actions as are necessary or appropriate to winddown the Debtors as expeditiously and efficiently as reasonably practicable, including the establishment of any winddown accounts or the retention of appropriate professionals. The fees and expenses (including attorneys' and advisors' fees and expenses) incurred by the Liquidation Trustee for the winding-down of the Debtors shall be paid by the Liquidation Trust, in the ordinary course of business on ten (10) days' notice to all parties who have filed a Notice of Appearance in the Debtors' Cases and shall not be subject to Bankruptcy Court approval; *provided, however*, any disputes related to such fees and expenses shall be brought before the Bankruptcy Court.

## ARTICLE XI
## EXECUTORY CONTRACTS

**11.01  Rejection of Executory Contracts**

(a)      Except for any Executory Contracts of the Debtors: (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to, and remains pending as of, the Confirmation Date; or (iii) that were previously assumed and assigned to the Purchaser, each Executory Contract and Unexpired Lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Nothing herein is intended to affect the validity of contracts and leases entered into by the Debtors on or after the Petition Date, or the rights of the Debtors thereunder, which shall remain in full force and effect after the Effective Date in accordance with their terms.

(b)      The Insurance Policies shall not be considered Executory Contracts for purposes of subsection (a) above. As discussed in section 7.08, the Insurance Policies shall remain in full force and effect following the Effective Date pursuant to their terms.

**11.02  Bar Date for Rejection Damages**

If the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, Estates, or Liquidation Trust, unless a Proof of Claim is Filed with the

Bankruptcy Court by the Rejection Damages Bar Date.

# ARTICLE XII
## PROVISIONS GOVERNING RESOLUTION OF
## CLAIMS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN

### 12.01   Claim Objections

**(a)     Right to Object to Claims.**

Subject to the terms of the Plan and the Liquidation Trust Agreement, notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Liquidation Trustee will have the authority, but not the obligation, to do any of the following with respect to any Claims or Interests: (1) File, withdraw or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court. The Liquidation Trustee shall succeed to any pending objections to Claims Filed by the Debtors prior to the Effective Date and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim.

**(b)     Claims Objection Deadline.**

Objections to Claims must be Filed with the Bankruptcy Court and a copy of the objection must be served on the subject Creditor before the expiration of the Claims Objection Deadline; otherwise, such Claims shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code. The objection shall notify the Creditor of the deadline for responding to such objection.  The Bankruptcy Court may extend the Claim Objection Deadline from time to time upon a motion Filed by the Liquidation Trustee on notice and an opportunity for a hearing.

**(c)     Claim Estimation.**

Pursuant to section 502(c) of the Bankruptcy Code, the Liquidation Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

### 12.02   Distribution Provisions

**(a)     Distributions to be Made.**

Except to the extent that distributions have been made on or prior to the Effective Date, the Liquidation Trustee shall be responsible for making Distributions required or permitted to be made under the Plan.

(b)      **Establishment of Reserves.**

On the Effective Date, the Liquidation Trustee shall establish and maintain a Reserve of Cash from the Liquidation Trust Assets as the Liquidation Trustee deems reasonably necessary to satisfy any Disputed Claims and any Ordinary Course Liabilities, as well as for the Liquidation Trust Expense Reserve. Further, upon the Professional Fee Bar Date, the Liquidation Trustee shall establish a Reserve of Cash from the Liquidation Trust Assets in an amount that the Liquidation Trustee deems reasonably necessary to satisfy all Professional Fee Claims.

(c)      **Distribution Record Date.**

As of 5:00 p.m. (Eastern Time) on the Distribution Record Date, the transfer registers for Claims shall be closed. The Liquidation Trustee shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those Holders who are Holders of Claims as of 5:00 p.m. (Eastern Time) on the Distribution Record Date. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (Eastern Time) on the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

(d)      **No Liability.**

The Liquidation Trustee shall only be required to make Distributions in accordance with the terms of the Plan or the Liquidation Trust Agreement. Except on account of gross negligence, fraud, illegality or willful misconduct, the Liquidation Trustee shall have no (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to it in accordance with the Plan, or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of the Plan.

(e)      **Distributions on Account of Disputed Claims.**

Except as otherwise provided in a Final Order or as agreed by the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidation Trustee at such periodic intervals as the Liquidation Trustee determines to be reasonably prudent.

(f)      **No Distributions Pending Allowance.**

Notwithstanding anything herein to the contrary: (a) no Distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Liquidation Trustee, no Distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim until such Person's Disputed Claims have been resolved by settlement or Final Order.

(g)      **Distributions in Cash.**

Any required Cash payments to the Holders of Allowed Claims or Interests shall be made by the Liquidation Trustee: (a) in U.S. dollars by check drawn on a domestic bank, or by wire transfer from a domestic bank, and (b) by first-class mail (or by other equivalent or superior means as determined by the Liquidation Trustee).

(h)      **Timing of Distributions.**

Except as specifically set forth in the Plan, the Liquidation Trustee may determine, in its discretion, the appropriate timing, amount, and cadence for Distributions.

(i)      **Unclaimed Distributions.**

Any entity which fails to claim any Cash within 90 days from the date upon which a Distribution is first made to such entity shall forfeit all rights to any Distribution under the Plan, and the Liquidation Trustee shall be authorized to cancel any Distribution that is not timely claimed. Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the source of such Distribution (*i.e.,* the Liquidation Trust or the applicable Reserve) free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules. Upon forfeiture, the claim of any Creditor or Interest Holder with respect to such funds shall be irrevocably waived and forever barred against all of the Debtors, the Estates, and the Liquidation Trustee, notwithstanding any federal or state escheat laws to the contrary, and such Creditor or Interest Holder shall have no claim whatsoever against the any of the foregoing or to any Holder of a Claim to whom Distributions are made.

(j)      **Delivery of Distributions and Undeliverable Distributions to Holders of Claims.**

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Liquidation Trustee, as set forth on the latest date of the following documents: (a) at the address of payment set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed; (b) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related Proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtors have not received a written notice of a change of address prior to the Effective Date.

(k)      **Undeliverable Distributions.**

The Liquidation Trustee shall make one attempt to make the Distributions contemplated hereunder in accordance with the procedures set forth herein. The Liquidation Trustee in its sole discretion may, but shall have no obligation to, attempt to locate Holders of undeliverable Distributions. Any Distributions returned to the Liquidation Trustee as undeliverable or otherwise shall remain in the possession of the Liquidation Trust, until such time as a Distribution becomes deliverable, and no further Distributions shall be made to such Holder unless such Holder notifies the Liquidation Trustee of its then current address. Any

Holder of an Allowed Claim or Interest entitled to a Distribution of property under this Plan that does not assert a claim pursuant to the Plan for an undeliverable Distribution, or notify the Liquidation Trustee of such Holder's then current address, within 60 days of such Distribution shall have its claim for such undeliverable Distribution irrevocably waived and shall be forever barred from asserting any such claim against the Debtors, the Estates, and/or the Liquidation Trustee or their respective property, and such Distribution shall be deemed an Unclaimed Distribution under Section 9.02(i).

**(l)     De Minimis Distributions.**

If any interim distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may withhold such Distribution until a final Distribution is made to such Holder. If any final Distribution under the Plan to the Holder of an Allowed Claim is less than $50.00, the Liquidation Trustee may cancel such Distribution. Any potential Distributions pursuant to this Section shall be treated as an Unclaimed Distributions under Section 9.02(i) of the Plan.

**(m)     Remainder Amounts After Final Distribution.**

After final Distributions have been made in accordance with the terms of the Plan, the Liquidation Trustee may donate any remaining Liquidation Trust Assets to one or more charitable organizations as may be determined by the Liquidating Trustee  in its sole discretion.

### 12.03   Preservation and Assignment of Subordination Rights

Except as may be provided for herein, all subordination rights and claims relating to the subordination by the Debtors or the Liquidation Trustee of any Allowed Claims shall remain valid, enforceable, and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

### ARTICLE XIII
### EXCULPATION RELEASES AND INJUNCTION

### 13.01   EXCULPATION

**NEITHER (A) THE DEBTORS, NOR ANY OF THEIR OFFICERS, DIRECTORS, EMPLOYEES, MANAGERS, MEMBERS, PRINCIPALS, CONTROL PERSONS, SHAREHOLDERS  OR BANKRUPTCY COURT APPOINTED ADVISORS, ATTORNEYS, OR PROFESSIONALS OR AGENTS, OR (B) THE COMMITTEE, NOR ANY OF ITS BANKRUPTCY COURT APPOINTED MEMBERS, ATTORNEYS, OR PROFESSIONALS, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATED TO, OR ARISING OUT OF, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY OF THE DEBTORS TO BE REALIZED, LIQUIDATED, RETAINED OR DISTRIBUTED UNDER THE PLAN, EXCEPT ACTUAL FRAUD,  WILLFUL MISCONDUCT OR GROSS NEGLIGENCEAND, IN ALL RESPECTS, THE DEBTORS, AND THEIR RESPECTIVE MEMBERS, MANAGERS, OFFICERS, DIRECTORS, EMPLOYEES, AND BANKRUPTCY COURT APPOINTED ADVISORS, PROFESSIONALS AND AGENTS AND THE COMMITTEE AND ITS BANKRUPTCY COURT**

APPOINTED MEMBERS, ATTORNEYS AND PROFESSIONALS SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

### 13.02   DEBTORS' AND SHAREHOLDERS' RELEASES

**Debtors and Shareholders Release.**

**For purposes of this section, the term "Released Parties" includes the Debtors, the Settling Shareholders, ANS Founders, the Lorient Parties  the Continuum Entities and Key Bank their successors and assigns in any capacity. It is intended that as part of the Plan, the Released Parties be fully released from any and all claims arising from the within Bankruptcy Cases including acts occurring on or prior to December 15, 2023.**

**Debtors' Release. Pursuant to Section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Confirmation Order becoming a Final Order and the occurrence of the Effective Date of the Plan, the Debtors and the Estates shall release each Released Party, and each Released Party is deemed released by the Debtors and the Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, liabilities whatsoever, including any direct, derivative, statutory or other claims, asserted or assertable by any of the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, based on or related to or in any manner arising from, in whole or in part, the Debtors, ANS Founders, the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale and transfer of any security, assets, rights or interests of the Debtors, the subject matter of or the transaction or events giving rise to any Claim or Interest that is treated in the Plan, the business, or contractual arrangements between any Debtors and any Released Party, the negotiation, formation or preparation of the Plan or related agreements, instruments or other documents, any other act or omission, transaction, agreement, event or other occurrence taking place on and before the Effective Date;  provided that the foregoing Debtors' Release shall not operate to waive or release any obligations of any Party under the Plan, or any other document, instrument or agreement executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute Bankruptcy Court approval of the Debtors' Release herein, which includes by reference each of the related provisions and definitions contained herein, and further, constitutes the Bankruptcy Court's finding that the Debtors' Release is : (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interest of the Debtors and all Holders of Claims and interests; (c) fair, equitable and reasonable; (d) given after due notice and an opportunity to be heard; and (e) a bar to any of the Debtors or the Estates asserting any direct, derivative, statutory or other Claim or Cause of Action released pursuant to the Debtor Release.**

**Settling Shareholders Releases: For good and valuable consideration, on and after and subject**

to the occurrence of the Confirmation Order becoming a Final Order and the occurrence of the Effective Date of the Plan, each of the Released Parties shall release each of the Debtors and Estates, and each of the Debtors and Estates is deemed released by the Released Parties from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, asserted or assertable on behalf of any of the Released Parties as applicable whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity or otherwise, that the Released Parties would have been legally entitled to assert in their own right or on behalf of the Holder of a Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right or interest of the Debtors, the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtors and any Released Parties, the negotiation, formulation or preparation of the Plan or related agreements or documents, any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Petition Date; provided that the foregoing Settling Shareholders Release shall not operate or waive or release (i) any obligations of any Party under the Plan, or any document to implement the Plan, (ii) each of the Released Parties' rights and interests in any retirement plans maintained by the Debtors, and (iii) each of the Released Parties' rights and entitlement to coverage under the D&O Liability Insurance Policy or any other insurance policy under which the Settling Shareholder is an insured, and any professional liability insurance policies as set forth in Section 7.06(g) of this Plan.

### 13.03    CONSENSUAL THIRD-PARTY RELEASES

**Consensual, Mutual Releases by and between the Released Parties.** On and after and subject to the Confirmation Order becoming a Final Order and the occurrence of the Effective Date of the Plan, except as otherwise provided in the Plan, pursuant to applicable provisions of the Bankruptcy Code and to the fullest extent permitted by applicable law, and for good and valuable consideration, the Released Parties, shall release each other, in each case on behalf of themselves and their respective successors and assigns, representatives, the adequacy of which is hereby acknowledged and confirmed, each Released Party, shall be deemed to have conclusively, absolutely unconditionally and irrevocably and forever provided a full waiver and release to each other respectively (and each such party so released shall be deemed forever released, waived and discharged by the other party) and their respective properties and assets from any and all claims, causes of action, and debts, obligations, suits rights, damages, demands, judgments, actions, remedies, liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date arising, in law or at equity, whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to the Debtors, ANS Founders, the Chapter 11 Cases, the asset sales, the pursuit of confirmation of the Plan, or the Plan, that the Released Parties respectively, would have been legally entitled to assert against any of the other Released Parties. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for

any notice to or any vote, consent, authorization, approval, ratification, or other action by any entity or other person or any director, stockholder, security holder, manager, member, or partner (or board thereof) of any entity. The court order approving the Plan will permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to this release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement executed to implement the Plan.

**Consensual, Mutual Release by Settling Shareholders.** On and after and subject to the Confirmation Order becoming a Final Order and the occurrence of the Effective Date of the Plan, except as otherwise provided in the Plan, pursuant to applicable provisions of the Bankruptcy Code and to the fullest extent permitted by applicable law, and for good and valuable consideration provided, the Settling Shareholders shall release each other in each case on behalf of themselves and their respective successors, assigns, and representatives, the adequacy of which is hereby acknowledged and confirmed, each Settling Shareholder will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full waiver and release to each other Settling Shareholder and their respective Affiliated Medical Practice (and each such party so released shall be deemed forever released, waived and discharged by the other party) and their respective properties and assets from any and all claims, causes of action, and any other debts, obligations, rights, suits, damages, demands, judgments, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of December 15, 2023 and which did not continue thereafter, arising, in law or at equity, whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or as of December 15, 2023 and which did not continue thereafter arising from or related in any way in whole or in part to the Debtors that each of the Settling Shareholders would have been legally entitled to assert against each other. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification, or other action by any entity or other person or any director, stockholder, security holder, manager, member, or partner (or board thereof) of any entity. The court order approving the Plan will permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to this release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement executed to implement the Plan.

13.04  **INJUNCTION**

ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.  EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR TO THE

**EXTENT NECESSARY TO ENFORCE THE TERMS AND CONDITIONS OF THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT. ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS, WILL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTORS, THEIR ESTATES, OR ANY OF THEIR PROPERTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTORS, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN, <u>PROVIDED, HOWEVER</u>, THAT SUCH ENTITIES WILL NOT BE PRECLUDED FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN, THE CONFIRMATION ORDER, OR THE LIQUIDATING TRUST AGREEMENT.**

## ARTICLE XIV
### CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### 14.01   Conditions Precedent to Confirmation

It shall be a condition to confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 14.03:

(a)     The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Plan Proponents, approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

(b)     Each of the Settling Shareholders shall have paid in full their respective contributions to the Estates.

(c)     The Plan, the exhibits thereto, and the Confirmation Order shall be in a form and substance reasonably acceptable to the Plan Proponents.

### 14.02   Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 114.03.

(d)     The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably acceptable to the Plan Proponents confirming the Plan pursuant to section 1129 of the Bankruptcy Code and such order shall have become final and non-appealable.

(e)     No stay of the Confirmation Order shall then be in effect.

(f)      The Liquidating Trust Agreement shall be executed, the Liquidating Trust shall be created, and the Liquidating Trustee shall have been appointed and accepted such appointment.

(g)      Each of the Releases shall be executed and be in effect.

(h)      All parties to the Releases under Section 13.02 of this Plan shall execute and deliver a Joinder to the Plan agreeing to be bound to the Releases.

(i)      The Post-Confirmation Committee shall have been organized.

### 14.03   Waiver of Conditions

The conditions to confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article XI may be waived at any time by each of the Plan Proponents only pursuant to an order of the Bankruptcy Court or the written approval of the Settling Shareholders, KeyBank, the Lorient Parties and the Continuum Entities.

### 14.04   Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest or any other entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Committee, any Creditors or Interest Holders or any other entity in any respect.

### 14.05   Filing of Notice of the Effective Date.

On the Effective Date or as shortly thereafter as reasonably practicable, the Plan Proponents shall File a notice of the Effective Date with the Bankruptcy Court.

## ARTICLE XV
## MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN

### 15.01   Modification and Amendments

Except as otherwise specifically provided herein, each of the Plan Proponents reserves the right to modify the Plan as to material terms and seek confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend or modify materially the Plan with respect to any or all Debtors, one or more times, after confirmation and before the Effective Date, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be

necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article and with the consent of both of the Plan Proponents. In addition, prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

### 15.02   Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re- solicitation under Bankruptcy Rule 3019.

### 15.03   Revocation or Withdrawal of the Plan

Each of the Plan Proponents reserves the right to revoke or withdraw the Plan before the Effective Date. If the Plan Proponents revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur on or before 60 days after the entry of the Confirmation Order, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of any Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or Claims by any Debtor against any other entity; (b) prejudice in any manner the rights of such Debtor, the Committee, the Holder of any Claim or Interest or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, the Committee or any other entity.

### ARTICLE XVI
### JURISDICTION

### 16.01   Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over these Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a) To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b) To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c) To determine any and all applications or motions pending before the Bankruptcy

Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(d)     To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any Plan Documents including the Liquidation Trust Agreement or any entity's obligations in connection with the Plan or any Plan Documents, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)     To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, or the Liquidation Trustee;

(g)     To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, or the Estates that may be pending on the Effective Date or that may be brought by the Debtors or the Liquidation Trustee, or any other related proceedings by the Liquidation Trustee, and to enter and enforce any default judgment on any of the foregoing;

(h)     To decide or resolve any and all applications for compensation with respect to Professional Fee Claims;

(i)     To issue orders in aid of execution and implementation of the Plan or any Plan Documents including the Liquidation Trust Agreement to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)     To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or Consummation of the Plan or any Plan Documents including the Liquidation Trust Agreement;

(k)     To interpret and enforce any orders entered by the Bankruptcy Court in these Chapter 11 Cases;

(l)     To address issues and disputes related to the actions by the Liquidation Trustee or to the enforcement and interpretation of the Liquidation Trust Agreement; and

(m)     To enter an order closing these Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

### 16.02   Limitation on Jurisdiction

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents. For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

(n)   Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in accordance with 28 U.S.C. § 157(c) and any and all related proceedings, including, without limitation, (i) all proceedings concerning disputes with, or Causes of Action or Claims against, any Person that the Debtors, the Estates, or the Liquidation Trust or any of their successors or assigns, may have, and (ii) any and all Causes of Action or other Claims against any Person for harm to or with respect to (x) any Estate Property, including conversion of Estate Property, or (y) any Estate Property liened or transferred by the Debtors to any other Person;

(o)   Include jurisdiction over the recovery of any Estate Property (or property transferred by the Debtors with Bankruptcy Court approval) from any Person wrongly asserting ownership, possession or control of the same, whether pursuant to sections 542, 543, 549, and/or 550 of the Bankruptcy Code or otherwise, as well as to punish any violation of the automatic stay under section 362 of the Bankruptcy Code or any other legal rights of the Debtors or the Estates under or related to the Bankruptcy Code; and

(p)   Permit the taking of any default judgment against any Person who has submitted himself or herself to the jurisdiction of the Bankruptcy Court.

## ARTICLE XVII
## MISCELLANEOUS

### 17.01   Exemption from Taxes

The Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; and (b) the creation, execution and delivery of agreements or other documents creating or evidencing the formation of the Liquidation Trust and any right or interest in the Liquidation Trust. Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 17.02   Compliance with Tax Requirements

Notwithstanding anything to the contrary in this Combined Disclosure Statement and Plan, the Liquidation Trust shall be entitled to deduct any federal, state or local withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate. The Liquidation Trust shall be authorized

to take all actions necessary to comply with applicable withholding and reporting requirements, including, without limitation, applying a portion of any Distribution of Cash to be made under the Plan to pay applicable withholding Taxes. Any amounts withheld pursuant to the immediately preceding sentence will be deemed to have been Distributed and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution. The Liquidation Trustee shall have the right, but not the obligation, to not make a Distribution until the applicable recipient has made arrangements satisfactory to the Liquidation Trustee for the payment of any Tax obligations. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date, and the remaining portion of such Distributions, if any, will apply to any interest on such Claim after the Petition Date. The Liquidation Trustee shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation or certification as may be requested by the Liquidation Trustee as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Liquidation Trustee with an executed Form W-9, Form W-8 or other requested tax form within 90 days after the date of the Liquidation Trustee's initial request, the Liquidation Trustee may, in its sole discretion (a) make such Distribution net of applicable withholding or (b) reserve such Distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, (ii) any such Distribution shall revert to the source of such Distribution (*i.e.,* the Liquidation Trust or the applicable Reserve), for Distribution on account of other Allowed Claims and (iii) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court. The Liquidation Trustee reserves the right to allocate and Distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

### 17.03    Defenses and Setoff

Nothing contained in this Combined Disclosure Statement and Plan shall constitute a waiver or release by the Debtors, their estates, or the Liquidation Trustee or any other party of any right rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Liquidation Trustee may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtors, the Estates, or the Liquidation Trustee may have against the Holder of such Claim or Interest.

### 17.04    Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey, without giving effect to the principles of conflicts of law thereof.

### 17.05    Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan or any Plan Document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 17.06    Transfer of Claims

Prior to the Effective Date, any transfer of a Claim shall be in accordance with Bankruptcy Rule 3001(e) and the terms of this Section. Notice of any such transfer shall be forwarded to counsel for the Debtors. Both the transferee and transferor shall execute any notice, and the signatures of the parties shall be acknowledged before a notary public. The notice must clearly describe the interest in the Claim to be transferred. No transfer of a partial interest shall be allowed. All transfers must be of one hundred percent (100%) of the transferor's interest in the Claim.

The beneficial interests owned by the Liquidation Trust Beneficiaries, which shall be reflected only on the records of the Liquidation Trust maintained by the Liquidation Trustee, shall be uncertificated, non-negotiable, and neither assignable nor transferable voluntarily. In the case of a deceased individual Liquidation Trust Beneficiary, its executor or administrator shall succeed to such decedent's beneficial interest upon notice to the Liquidation Trustee.

### 17.07    Post-Effective Date Service List

Pursuant to Bankruptcy Rule 2002 and any applicable Local Rule, notice of all post- confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee, counsel to the Plan Proponents, counsel for the Liquidation Trustee, all persons on the Bankruptcy Rule 2002 service list, and all persons (and their counsel, if known) whose rights are affected by such post-confirmation matters. With the exception of the Plan Proponents and the U.S. Trustee, any Person desiring to remain on the Debtors' Bankruptcy Rule 2002 service list shall be required to File a request for continued service and to serve such request upon counsel to the Liquidation Trustee within thirty (30) days subsequent to the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. **Persons who do not File a request for continued service within thirty (30) days subsequent to the Effective Date shall be removed from the Debtors' Bankruptcy Rule 2002 service list.**

### 17.08    Notices

To be effective, any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to counsel to the Debtors, the Committee, and the U.S. Trustee must be sent by electronic mail, overnight delivery service, courier service, or messenger to:

**ANS Debtors' Counsel**:
David L Bruck
Greenbaum Rowe Smith & Davis LLP

99 Wood Avenue South
Iselin, New Jersey 08830
Telephone: 732 549 5600
Email: dbruck@greenbaumlaw.com

**Debtor Hanover Hills Counsel**
Joseph J. DiPasquale Esq,
Michael R. Herz Esq.
Agostino A. Zammiello Esq.
Fox Rothschild LLP
49 Market Street
Morristown, New Jersey 07960
Telephone: 973 992 9125
Email: jdipasquale@foxrothschild.com
mherz@foxrothschild.com
azammiello@foxrothschild.com

### 17.09   Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidation Trust, any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts with one or more of the Debtors.

### 17.10   Severability of Plan Provisions

If, before the Effective Date of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Plan Proponents.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Plan Proponents' consent; and (iii) non- severable and mutually dependent.

### 17.11   Exhibits

All exhibits and documents attached hereto are incorporated into and are a part of the Plan as if set

forth in full in the Plan, to the extent not inconsistent with the Plan.  The Plan Proponent reserves the right to amend the Exhibits and schedules (if any) to the Plan any time prior to the Confirmation Date.

### 17.12   Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non- bankruptcy law, and pursuant to section 1125(e), the Plan Proponents and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, including, if applicable, in the offer, issuance, sale and purchase of any Plan securities (if any) provided under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan.

### 17.13   Conflicts

If there is a conflict between this Combined Disclosure Statement and Plan and an Exhibits hereto, including the Liquidation Trust Agreement, the Combined Disclosure Statement and Plan shall govern and control, except for inconsistencies or clarifications in furtherance of the Liquidation Trust as a liquidating trust for federal income tax purposes, in which case the terms and/or provisions of the Liquidation Trust Agreement shall govern. If any provision of this Combined Disclosure Statement and Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

### 17.14   U.S. Trustee Fees

The Debtors will pay pre-confirmation fees owed to the U.S. Trustee on or before the Effective Date of the Plan. After the Effective Date, the Liquidation Trustee will File with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Liquidation Trustee will pay post-Effective Date quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

### 17.15   Implementation

The Plan Proponents and the Liquidation Trustee shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan and the Plan Documents, without further order from the Bankruptcy Court.

### 17.16   No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtors, the Estates, or the Committee with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

October 2, 2024

**Atlantic Neurosurgical Specialists PA**


*/s/ Ronald Benitez M.D.*
Name:  Ronald Benitez M.D.
Title: President


**ANS Newco, LLC**


*/s/ Ronald Benitez M.D.*
Name: Ronald Benitez M.D.
Title: President


**Hanover Hills Surgery Center LLC**


*/s/ Ronald Benitez M.D.*
Name: Ronald Benitez M.D.
Title: Authorized Signatury


*/s/ David Berman*

Name: David Berman
Title: Authorized Signatury

9391668.1                                           54

<u>Submitted by</u>:

*Debtors' Counsel*

<u>*/s/ David L. Bruck*</u>
David L. Bruck
Greenbaum Rowe Smith & Davis LLP
99 Wood Avenue South
Iselin, New Jersey 08830
Telephone: (732) 549-5600
dbruck@greenbaumlaw.com

     -and-

*Debtor HHSC's Counsel*

<u>*/s/ Joseph J. DiPasquale*</u>
Joseph J. DiPasquale, Esq.
Michael R. Herz, Esq.
Agostino A. Zammiello, Esq.
Fox Rothschild LLP
49 Market Street
Morristown, New Jersey 07960
Telephone: (973) 992-4800
jdipasquale@foxrothschild.com
mherz@foxrothschild.com
azammiello@foxrothschild.com

# **Exhibit A**

*Definitions*

9375995.1
DMS_US.366435582.3

9391668.1

As used in the Plan, the following terms have the following meanings:

1.    **"503(b)(9) Claims"** shall mean Claims arising under section 503(b)(9) of the Bankruptcy Code against one or more of the Debtors that were Filed against one or more of the Debtors on or before the General Bar Date.

2.    **"Administrative Claim"** shall mean any right to payment constituting a cost or expense of administration of these Chapter 11 Cases as it relates to one of the Debtors under section 503(b) and 507(a)(2) of the Bankruptcy Code including, any actual and necessary costs and expenses of preserving the Debtors' Estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred by the Debtors after the Petition Date in connection with the conduct of its business, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under section 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code, all wages, salaries and health and other benefits on account of services rendered after the Petition Date, all post-Petition Date taxes, and all other claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court, in each case relating to the period from the Petition Date to the Effective Date but not beyond.

3.    **"Affiliated Medical Practice"** shall mean the medical practices formed by the Shareholders individually, together (in part) and or with others through which they began practicing medicine on or after December 1, 2023, together with their respective officers, directors, shareholders, members, managers, agents, representatives, attorneys and employees.

4.    **"Allowed"** shall mean all or a portion of a Claim against one of the Debtors or an Interest in the Debtors (a) that has been listed by one of the Debtors in its Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Claim or proof of Interest has been Filed, (b) for which a proof of claim has been Filed and as to which no Objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any Objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and one or more of the Debtors prior to the Effective Date, or the Liquidation Trustee on behalf of the Debtors Estates after the Effective Date or (iii) pursuant to the terms of this Combined Disclosure Statement and Plan. For purposes of computing Distributions under this Combined Disclosure Statement and Plan, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Combined Disclosure Statement and Plan. For the avoidance of doubt, any Claim that relates to obligations that were assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be an Allowed Claim for purposes of this Combined Disclosure Statement and Plan.

5.    **"ANS Continuum"** shall mean ANS Continuum Holdco LLC.

9375995.1
DMS_US.366435582.3

9391668.1

6.      **"ANS Debtors"** shall mean Atlantic Neurosurgical Specialists PA and ANS Newco LLC.

7.      **"ANS Founders"** shall mean ANS Founders PC.

8.      **"Assets"** shall mean all tangible and intangible assets of every kind and nature of the Debtors and their Estates within the meaning of section 541 of the Bankruptcy Code.

9.      **"Avoidance Actions"** shall mean any and all claims or causes of action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553, and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such claims or causes of action as of the Effective Date.

10.      **"Bankruptcy Code"** shall mean Title 11 of the United States Code and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

11.      **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of New Jersey.

12.      **"Bankruptcy Rules"** shall mean, when referenced generally, (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of Title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedures for the United States Bankruptcy Court for the District of New Jersey, and (iv) any standing orders governing practice and procedure issues by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases or proceedings therein, as the case may be; provided, however, when a specific Bankruptcy Rule is referenced (*e.g.*, Bankruptcy Rule 9019), such reference shall be to such Rule under the Federal Rules of Bankruptcy Procedure.

13.      **"Bar Date"** shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing proofs of Claim or proofs of Interest against one or more of the Debtors in these Chapter 11 Cases for that specific Claim or Interest, as set forth in the Bar Date Order.

14.      **"Bar Date Order"** shall mean the Order entered on August 27, 2024 as Document No. 154.

15.      **"Business Day"** shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

16.     **"Cash"** or **"$"** shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

17.     **"Cause of Action" or "Causes of Action"** shall mean, individually or collectively and without limitation, any and all actions, liabilities, obligations, rights to legal or equitable remedies, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, matured or unmatured, disputed or undisputed and whether asserted or assertable directly or derivatively in law, equity or otherwise held by the Debtors, the Committee, or the Estates as of the Effective Date, including, without limitation, Avoidance Actions, commercial tort claims as defined in Article 9 of the UCC, the D&O Claims and any and all claims and causes of action against the Debtors' current or former directors, officers, managers, members, employees, and any and all proceeds of the foregoing Causes of Action; *provided, however*, with respect to the Settling Shareholders who are Insureds, Causes of Action shall not exceed the D&O Recovery; and provided, further, that Causes of Action do not include any Claims against Settling Shareholders who are not Insureds.

18.     **"Chapter 11 Cases"** shall mean the Debtors' chapter 11 cases, which are jointly administered under Case No. 24-15726 (VFP) in the Bankruptcy Court.

19.     **"CIA"** shall mean Continuum Institute Atlantic LLC

20.     **"Claim"** or **"Claims"** shall mean a claim or claims against one or more of the Debtors, as such term is defined in section 101(5) of the Bankruptcy Code.

21.     **"Claims Objection(s)"** shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

22.     **"Claims Objection Deadline"** shall mean one hundred eighty (180) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidation Trustee may File one or more motions with the Bankruptcy Court on notice and an opportunity for a hearing to extend such deadline from time to time.

23.     **"Class"** shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article IV of this Combined Disclosure Statement and Plan.

24.     **"Combined Disclosure Statement and Plan"** shall mean this entire document and all exhibits, schedules and related documents, whether annexed hereto or filed in connection herewith, including the Disclosure Statement portions and the Plan portions.

25.     **"Confirmation Date"** shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases, within the meaning

of Bankruptcy Rules 5003 and 9021.

26.     **"Confirmation Hearing"** shall mean the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

27.     **"Confirmation Order"** shall mean the order of the Bankruptcy Court (a) approving the adequacy of the information in the Combined Disclosure Statement and Plan pursuant to section 1125 of the Bankruptcy Code, and (b) confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

28.     **"Consummation"** shall mean the occurrence of the Effective Date and fulfillment of substantially all the steps necessary to implement the terms and provisions of the Plan.

29.     **"Contingent"** shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

30.     **"Continuum Entities"** shall mean ANS Continuum Holdco LLC, Continuum Institute Atlantic LLC, Continuum Institute LLC and Florham Park Investors LLC.

31.     **"Committee"** shall mean the official committee of unsecured creditors appointed by the U.S. Trustee, the composition of which has changed as a result of the resignation prior to the Effective Date of a member of the Committee.

32.     **"Creditor"** shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

33.     **"CRO"** shall mean Thomas Buck as to the Debtors.

34.     **"D&O Claims"** shall mean potential causes of action, excluding Avoidance Actions, against the Debtors' officers, directors, managers, and executive committee members or members of the governing boards  at relevant points in time. D&O Claims that may be asserted by the Debtors or the Liquidation Trustee shall be limited to only Shareholders who served as directors and officers of the Debtors and shall not include Shareholders who only served as employees of the Debtors.

35.     **"D&O Insurer"** shall mean Argonaut Insurance Company.

36.     **"D&O Liability Insurance Policy"** shall mean the insurance Policy No. ML7602904-6, issued to Named Insured ANS Continuum Holdco LLC by D&O Insurer for the effective period September 21, 2023 through September 21, 2024.

37.    **"D&O Recovery"** shall mean the net recovery by the plaintiff, if any, against the D&O Liability Insurance Policy.

38.    **"Debtors"** shall mean, collectively, Atlantic Neurosurgical Specialists PA and ANS Newco LLC and Hanover Hills Surgery Center LLC.

39.    **"Debtor ANS"** shall mean Atlantic Neurosurgical Specialists P.A.

40.    **"Debtor Hanover Hills"** shall mean Hanover Hills Surgery Center LLC.

41.    **"Debtor Newco"** shall mean ANS Newco LLC.

42.    **"Disallowed"** shall mean with respect to any Claim or Interest or portion thereof, any Claim against or Interest in one or more of the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtors or the Liquidation Trustee, whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) is listed in the Schedules as zero or as Disputed, Contingent or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) is evidenced by a proof of Claim or a proof of Interest which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (viii) where the Holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim or a Disallowed Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

43.    **"Disallowed Claim"** shall mean a Claim, or any portion thereof, that is Disallowed.

44.    **"Disallowed Interest"** shall mean an Interest, or any portion thereof, that is Disallowed.

45.    **"Disbursing Agent"** shall mean the Debtor with respect to distributions on or prior to the Effective Date and the Liquidation Trustee or any third party designated by the Liquidation Trustee to act as Disbursing Agent after the Effective Date.

46.  **"Disclosure Statement"** shall mean the disclosure statement, as amended, supplemented or modified from time to time, that is embodied within this Combined Disclosure Statement and Plan and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

47.  **"Disputed"** shall mean any Claim or Interest which has not yet been Allowed or Disallowed in accordance with the terms of this Combined Disclosure Statement and Plan.

48.  **"Disputed Claims"** shall mean any Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, Disputed Secured Claims, and Disputed General Unsecured Claims.

49.  **"Distributable Cash"** shall mean the Cash available for distribution pursuant to the Plan on the Effective Date.

50.  **"Distribution"** shall mean any distribution made pursuant to the Plan by the Disbursing Agent to the Holders of Allowed Claims.

51.  **"Distribution Date"** shall mean the date on which a Distribution is made pursuant to this Combined Disclosure Statement and Plan.

52.  **"Distribution Record Date"** shall mean the date established for determining the Holders of Allows Claims or Allowed Interests entitled to Distributions pursuant to the Plan, which shall be the Confirmation Date.

53.  **"Effective Date"** shall mean the first Business Day after the date on which (a) the Confirmation Order becomes a Final Order; and (b) all conditions in Article XIV of this Combined Disclosure Statement and Plan have been satisfied or waived in accordance with that Article.

54.  **"Entity"** shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

55.  **"Estate"** or **"Estates"** shall mean one or more estates of the Debtors created pursuant to section 541 of the Bankruptcy Code.

56.  **"Exculpated Parties"** shall mean as of the Petition Date through the date of the closing of these Chapter 11 Cases (and in the event that these Chapter 11 Cases are closed and subsequently reopened, during such time as these Chapter 11 Cases are reopened): (i) the Debtors,
(ii) the Debtors' directors and officers, (iii) the Committee, and (iv) in the case of (i) – (iii), each of their respective Representatives, (as defined herein) and in the case of the Committee, each of its members (each solely in such capacity); *provided*, *however*, that with respect to any Person

identified herein, such Person shall be considered an Exculpated Party solely to the extent that such Person participated in actions to which section 1125(e) of the Bankruptcy Code applies.

57.    **"Executory Contract"** shall mean a contract or lease to which one of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

58.    **"File," "Filed,"** or **"Filing"** shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases; provided, however, that with respect to proofs of Claim and proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by the Bar Date Order or as otherwise established by order of the Bankruptcy Court.

59.    **"Final Administrative Claims Bar Date"** shall mean the date that is 30 days after the Effective Date, which shall be the deadline for Filing requests for payment of Administrative Claims that arose after the Closing Date.

60.    **"Final Order"** shall mean an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Liquidation Trustee on behalf of the Estates (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or petitioned for certiorari, reargued or reheard, and shall have been denied affirmed and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under rule 59 or rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

61.    **"Florham Park"** shall mean Florham Park Investors LLC.

62.    **"General Bar Date"** shall mean on or before 5:00 p.m. (Prevailing Eastern Time) for certain Claims arising before the Petition Date, including 503(b)(9) Claims, Secured Claims, General Unsecured Claims, or Priority Non-Tax Claims as established by the Bar Date Order.

63.    **"General Unsecured Claim"** shall mean any unsecured Claim against the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not: (i) an Administrative Claim, (ii) a Priority Tax Claim, (iii) a Secured Claim, (iv) a Priority Non-Tax Claim, or (v) an

Intercompany Claim.

64.    **"Global Settlement"** shall mean the terms and provisions of Section [  ] of the Combined Joint Disclosure Statement and Plan.

65.    **"Governmental Unit"** shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

66.    **"Governmental Unit Bar Date"** shall mean on or before 5:00 p.m. (Prevailing Eastern Time) as established by the Bar Date Order.

67.    **"Holder"** or **"Holders"** shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

68.    **"Impaired"** shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69.    **"Impaired Class"** shall mean a Class of Claims or Interests that is Impaired under Section 1124 of the Bankruptcy Code.

70.    **"Insider"** shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code and any Person which is or at any relevant time was an officer, director, manager, or member of the Debtors.

71.    **"Insurance Policies"** shall mean all insurance policies that have been issued to, or provide coverage to, any of the Debtors and all agreements, instruments, or documents relating thereto.

72.    **"Insured"** shall mean a director or officer of the Debtors who was an "Insured Person" as defined in the D&O Liability Insurance Policy.

73.    **"Intercompany Claim"** shall mean any account reflecting intercompany book entries by one Debtor with respect to another Debtor.

74.    **"Interests"** shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership

interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

75.    **"IRS"** shall mean the Internal Revenue Service of the United States of America.

76.    **"KeyBank"** shall mean KeyBank National Association.

77.    "**Key Bank Predecessor(s) in Interest**" shall mean the Continuum Entities and the Lorient Parties and shall refer to KeyBank as the assignee of, or successor in interest to, all Claims of the Continuum Entities and the Lorient Entities relating to the Debtors, ANS Founders and the Shareholders, whether or not such Claims were assigned to or held by KeyBank.

78.    "**Lease**" shall mean the premises leased by Debtor Hanover Hills from Hanover Associates LLC to operate a surgical center in Florham Park, New Jersey.

79.    **"Liquidation Analysis"** shall mean that certain liquidation analysis, as may be amended, modified or supplemented, attached to this Combined Disclosure Statement and Plan as Exhibit B.

80.    **"Liquidation Trust"** shall mean the trust established under the Plan and the Liquidation Trust Agreement.

81.    **"Liquidation Trust Agreement"** shall mean the trust agreement that establishes the Liquidation Trust and governs the powers, duties, and responsibilities of the Liquidation Trustee. The Liquidation Trust Agreement is attached to the Plan as Exhibit C.

82.    **"Liquidation Trust Assets"** shall mean all Assets, including Causes of Action, of the Estates as of the Effective Date transferred to the Liquidation Trust under the Plan.

83.    **"Liquidation Trust Beneficiaries"** shall mean the Holders of all Allowed General Unsecured Claims.

84.    **"Liquidation Trust Expenses"** shall mean the reasonable fees, costs and expenses of the Liquidation Trust's retained professionals, as determined in the reasonable discretion of the Liquidation Trustee. For the avoidance of doubt, U.S. Trustee Fees shall be considered a Trust Expense.

85.    **"Liquidation Trust Expense Reserve"** shall mean the reserve established pursuant to Section 9.02 of this Combined Disclosure Statement and Plan for payment of the actual and projected costs and expenses of the Liquidation Trust, which may be replenished or adjusted from time to time with Cash held by the Liquidation Trust, other than funds in the other Reserves.

86.    **"Liquidation Trustee"** shall mean ………… solely in its capacity as Liquidation Trustee of the Liquidation Trust pursuant to the terms and conditions of this Combined Disclosure Statement and Plan and the Liquidation Trust Agreement.  Jason Dinoff shall be the employee of the Liquidation Trustee who shall be primarily responsible for administering the Liquidation Trust on behalf of the Liquidation Trustee.

87.    **"Local Rules"** shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey.

88.    **"Lorient"** shall mean Lorient Capital Management LLC.

89.    **"Lorient Parties"** shall mean (a) Lorient Capital Management LLC, and (b) Lorient Continuum Investors LLC.

90.    "**Net Recovery**" shall mean a recovery with respect to the D&O Liability Insurance Policy.

91.    **"Ordinary Course Liabilities"** shall mean those obligations incurred in the ordinary course of business by one or more of the Debtors following the Petition Date.

92.    **"Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

93.    **"Petition Date"** shall mean June 5, 2024, for the ANS Debtors and July 12, 2024 for Debtor Hanover Hills

94.    **"Plan"** shall mean that portion of this Combined Joint Disclosure Statement and Plan that specifies the classification, treatment, and means for implantation of the distribution to certain Creditors under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules.

95.    **"Plan Proponents"** shall mean the Debtors.

96.    **"Priority Non-Tax Claim"** shall mean any and all Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

97.    **"Priority Tax Claim"** shall mean a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

98.    **"Pro Rata"** shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such

Allowed Claim under the Plan, as applicable.

99. **"Professional"** shall mean any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328 or 1103, or for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

100. **"Professional Fee Bar Date"** shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be thirty (30) days after the Effective Date.

101. **"Professional Fee Claims"** shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

102. **"Rejection Claim"** shall mean any Claim for amounts due as a result of the rejection by one of the Debtors of any Executory Contract under section 365 of the Bankruptcy Code.

103. **"Rejection Damages Bar Date"** shall mean the deadline by which a counterparty to an Executory Contract of the Debtor rejected by order of the Court or under this Combined Disclosure Statement and Plan must File Rejection Claim and shall be 5:00 p.m. (Eastern Time) on the date that is 30 days following service of an order approving rejection of any Executory Contract of one of the Debtors or 30 days following service of the Confirmation Order.

104. **"Released Party"** shall mean the Debtors, the Settling Shareholders, the Affiliated Medical Practices, ANS Founders, the Lorient Parties, the Continuum Entities and Key Bank and their successors and assigns, together with each of their respective officers, directors, shareholders, members, agents, attorneys, other professionals and representatives.

105. **"Representatives"** shall mean with respect to an Entity, all of that Entity's current officers, directors, managers, managing members, principals, shareholders, members, partners, employees, agents, advisors, attorneys, professionals, accountants, investment bankers, consultants and other representatives and such Person's respective heirs, executors, estates, servants and nominees, in each case in their capacity as such.

106. **"Reserves"** shall mean, collectively, the Reserves established by the Liquidation Trustee pursuant to Section 9.02 of the Plan.

107. **"Schedules"** shall mean the schedules of Assets and Liabilities, schedules of Executory Contracts and Statements of Financial Affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time, which were filed on at D.I. 132.

108.   **"Secured Claim"** shall mean, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of one or more of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the Petition date, or (b) Allowed as such pursuant to the terms of this Combined Disclosure Statement and Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against one or more of the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

109.   **"Settling Shareholder"** shall mean a Shareholder and his related or affiliated partners, including but not limited to his Affiliated Medical Practice who elects to participate in the Global Settlement, pay his settlement contribution timely, and elect to provide the third-party releases in the Plan.

110.   **"Shareholders"** and each a **"Shareholder"** shall mean the eight (8) holders of equity interests in ANS Founders, Drs. Ronald Benitez, Kyle Chapple, Yaron Moshel, Jonathan Baskin, Jay Chun, John Knightly, Scott Meyer and Paul Saphier.

111.   **"Solicitation Procedures Order"** shall mean the Court's *Order (I) Approving on an Interim Basis the Adequacy of Disclosures in the Combined Plan and Disclosure Statement, (II) Fixing Voting Record Date, (III) Scheduling the Confirmation Hearing and Approving Form and Manner of Related Notice and Objection procedures Deadline for Filing Objections, (IV) Approving Solicitation Packages and Procedures and Deadlines for Soliciting, Receiving, and Tabulating Votes to Accept or Reject the Combined Plan and Disclosure Statement, and (V) Approving Form of Ballot and Notice to Non-Voting Classes*, including all exhibits thereto, to be filed after filing of the Plan and Disclosure Statement.

112.   **"Tax"** or **"Taxes"** shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

113.   **"Unclaimed Distributions"** shall mean any undeliverable or unclaimed Distributions.

114.   **"Unimpaired"** shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

115.    **"Unimpaired Class"** shall mean a Class of Claims that are not impaired within the meaning of section 1124 of the Bankruptcy Code.

116.    **"U.S. Trustee"** shall mean the office of the United States Trustee for the District of New Jersey.

117.    **"U.S. Trustee Fees"** shall mean all fees payable pursuant to 28 U.S.C. § 1930 and any interest thereon pursuant to 31 U.S.C. § 3717.

118.    **"Voting Agent"** shall mean Greenbaum Rowe Smith & Davis LLP counsel to the ANS Debtors.

119.    **"Voting Deadline"** shall mean to be decided by the Court         at 5:00 p.m. (Eastern Time), the date and time by which ballots to accept or reject the Plan must be received by the Voting Agent in order to be counted, as set forth by the Solicitation Procedures Order.

## **Exhibit B**

*Liquidation Analysis*

# TO BE FILED

## **Exhibit C**

*Liquidation Trust Agreement*

# TO BE FILED