**GREENBAUM, ROWE, SMITH & DAVIS LLP**
David L. Bruck, Esq.
P.O. Box 5600
Woodbridge, New Jersey 07095
Telephone: (732) 549-5600
Facsimile: (732) 476-2441
dbruck@greenbaumlaw.com
*Counsel to the Debtors and Debtors in Possession, Atlantic Neurosurgical Specialists, P.A. and ANS Newco LLC*

**FOX ROTHSCHILD LLP**
Joseph J. DiPasquale, Esq.
Michael R. Herz, Esq.
Agostino A. Zammiello, Esq.
49 Market Street
Morristown, New Jersey 07960
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
jdipasquale@foxrothschild.com
mherz@foxrothschild.com
azammiello@foxrothschild.com
*Counsel to the Debtor and Debtor in Possession, Hanover Hills Surgery Center LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**ATLANTIC NEUROSURGICAL SPECIALISTS, P.A. *et al*,**[1]<br><br>Debtors. | Chapter 11<br><br>**Case No. 24-15726(VFP)**<br><br>**Jointly Administered** |

**THE MOTION OF THE ANS DEBTORS FOR AN ORDER APPROVING THE SETTLEMENT BY AND BETWEEN <u>THE SETTLING PARTIES</u>**

Atlantic Neurosurgical Specialists and ANS Newco LLC (the "ANS Debtor") by and through counsel, Greenbaum Rowe Smith & Davis LLP files this motion with the Court to Approve the Settlement by and between Key Bank, the ANS Debtors, the Committee, the ANS Group (including but not limited to the Setling Shareholders) and the Borrower Group (collectively the Settling Parties) (the "Motion").

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Atlantic Neurosurgical Specialists, P.A., d/b/a Atlantic Neurosurgical and Altair Health (0733); ANS Newco, LLC, d/b/a Altair Health (7893); and Hanover Hills Surgery Center LLC (8645).

I.  **PRELIMINARY STATEMENT**

On October 2, 2024, the ANS Debtors and Hanover Hills filed a Combined Joint Plan and Disclosure Statement (the Plan) in these cases. (Doc #223). The Debtors filed a Motion for Conditional Approval of the Combined Disclosure Statement on October 11, 2024 (Doc # 244). S Key Bank filed an Objection to the Debtor's Motion for Conditional Approval of the Combined Disclosure Statement, (Doc # 281 ) and the Committee filed a Motion to Terminate Exclusivity (Doc #251). The Parties, Key Bank, the ANS Group, the Shareholders, the Committee and the Borrower Group negotiated with each other through counsel in an attempt to reach an agreement and to confirm a Joint Plan. Being unable to reach an amicable resolution the Parties sought assistance of Chief Bankruptcy Judge Michael Kaplan. The parties held a mediation in Trenton on November 22, 2024, and a second mediation session was scheduled for December 13, 2024 but was adjourned. The parties continued to negotiate. The Settlement Agreement, Budget and Plan attached as Exhibits remain under discussion by the parties. Nevertheless, in a continued effort to reach an agreement so as to finalize this matter, all parties have agreed to the filing of this Motion with a hearing date of December 23, 2024. As set forth below a critical component of the settlement is the agreement by the Debtors to distribute $2,500,000 to Key Bank prior to year end subject to the entry of the Approval Order on or about December 23, 2024. It is for that reason that the matter is filed with an application for a hearing on shortened notice. Should the Settling Parties not reach a final agreement on or before December 23, 2024 so that the Motion can be heard, the Motion will be withdrawn. The Parties reserve all rights.

Integral to the Settlement is the agreement by the ANS Debtors the Committee and Key Bank to provide a year-end distribution to Key Bank from the monies on hand in the Debtors' accounts of $2,500,000. The Debtors would not agree to such distribution prior to the Effective

Date absent the agreements being provided in the settlement including the agreement by Key Bank and the Committee regarding the full extent of releases to be exchanged on the Effective Date and the agreement by Key Bank to vote in favor of the Plan. This Settlement Agreement does not provide for releases to be exchanged with the Settling Parties prior to the Effective Date nor does it provide for the allowance of Key Bank claims in either the ANS Cases or the Hanover Hills case. Those provisions are included in the Plan and are subject to the occurrence of the Effective Date. Upon entering the order approving the Settlement Agreement (the Approval Order), the Debtors will distribute $2,500,000 to Key Bank and the Settling Parties will be bound to the provisions of the Settlement Agreement providing a path to confirmation of a Joint Plan of Liquidation.

In the event that one or more of the Settling Parties objects to the settlement such objections may be heard at the hearing scheduled for December 23, 2024.

**II.    JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (E), and (O).

2.    The statutory basis for the relief requested herein is Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a).

**III.    BACKGROUND**

3.    The ANS Debtors were a medical practice located primarily in Morristown, New Jersey comprised of practicing physicians and clinical and non-clinical staff. On June 5, 2024 the ANS Debtors filed chapter 11 petitions in this matter. Hanover Hills Surgery Center LLC (Hanover Hills) owned a surgical center in Florham Park, New Jersey. Hanover Hills filed a chapter 11 petition in this Court on July 12, 2024. During the chapter 11 proceeding of Hanover Hills the

surgical center was sold pursuant to Bankruptcy Code section 363 to a third party subject to regulatory approval. The date of the closing of the sale has not yet been set. The ANS cases and the Hanover Hills case are jointly administered.

4. On June 27, 2024 the Office of the United States Trustee appointed a Committee of Unsecured Creditors in the ANS cases. The Committee is a party to this Settlement Agreement.

5. Hanover Hills is owned by ANS Continuum Holdco LLC (Holdco). Holdco is owned 59% by the ANS Debtors, 1% by the shareholders of ANS Founders PC and 40% by Continuum Institute Atlantic LLC (CIA). CIA and Holdco are part of the Borrower Group as defined in the Settlement Agreement and the Plan.

6. The ANS Group consists of Atlantic Neurosurgical Specialists PA, ANS Newco LLC, ANS Founders PC, New Jersey Pain Consultants PC and Morristown Intraoperative Monitoring PC and the shareholders of ANS Founders PC.

A. **The Present Status of the Cases.**

7. Key Bank has asserted a claim against the ANS Debtors in the amount of approximately $20,000,000. This claim was originally held by Holdco against the ANS Debtors, but Key Bank has represented that it acquired the Holdco claim against ANS through foreclosure of its security interest in the assets of Holdco.

8. Key Bank has asserted claims against the shareholders and officers and directors of the ANS Debtors arising from allegations of breaches of fiduciary obligations, breach of contract and other claims. The officers and directors are shareholders of ANS Founders PC. ANS Founders PC owns the ANS Debtors.

9. The Committee has alleged claims against the shareholders and officers and directors of the ANS Debtors as well, and has notified Argo, the Insurer having issued a D&O

policy with insurance coverage for the officers and directors of the ANS Debtors that it is making a claim under the Policy. The insurance under the Policy is $5,000,000.

10. The Shareholders have advised that they will vigorously defend any claims against them.

11. The Settling Parties by this Motion and the attachments including the Plan seek to resolve the claims of the Committee and Key Bank as against the Debtors and the Settling Shareholders but certain disputes remain.

12. The Parties engaged in negotiations since prior to the filing of the bankruptcies in an attempt to settle the various claims between the Parties. A mediation session was conducted by Chief Bankruptcy Judge Michael Kaplan on November 22, 2024 and as noted another mediation was scheduled for December 13, 2024 but was adjourned.

13. The Settlement Agreement attached addresses the disputes among Key Bank, the Settling Shareholders, the ANS Group (excluding the non-participating shareholders), the Borrower Group, the Debtors and the Committee, which includes the following material terms and conditions all of which except as otherwise mentioned are effective on the Effective Date following confirmation of the Plan.

(i) The Settling Shareholders shall each contribute $500,000 to the Debtor as provided in the Plan.

(ii) The Non-Settling Shareholders may become Settling Shareholders by depositing $100,000 each in the Trust Account of Greenbaum Rowe Smith & Davis LLP as a good faith deposit on or before December 23, 2024 and by committing to fund no less than $500,000 (inclusive of the $100,000 deposit) each to be contributed by them pursuant to the Opt In provisions of the Plan., Should one or more of the Non Settling

          Shareholders fail to make the good faith deposit of $100,000 on or before December 23, 2024, they thereafter they may become Settling Shareholders only by contributing $625,000 each to the Debtors prior to the date which is two weeks prior to the hearing on confirmation of the Plan and otherwise comply with the Opt In provisions of the Plan.

(iii)    Key Bank shall receive from the Debtors a settlement distribution of $2,500,000 on or before December 31, 2024, subject to Court approval of the Settlement Agreement. Such distribution shall reduce dollar for dollar the unsecured claim of Key Bank against the ANS Debtors.

(iv)    As part of the Plan the Debtors shall consent as of the Effective Date to the allowance of the Key Bank unsecured claim in the ANS cases in the amount of $20,000,000, reduced by the distribution of $2,500,000.

(v)    Key Bank agrees to vote in favor of the Plan in form as attached to the Settlement Agreement.

(vi)    The releases to be given by Key Bank, the Committee, the Borrower Group and the Debtors to the Settling Shareholders shall be full and absolute releases and shall include the Released Parties, their affiliated medical practices and each of their past and present respective officers, directors, employees, agents, representatives and professionals (the Related Party Releases). The term Related Parties is defined in the Settlement Agreement and in the Plan.

(vii)    In consideration for the covenants of the Estate Professionals, Key Bank and the Committee shall release the Released Professionals as that term is defined in the Plan.

(viii) Each of the professionals retained by the Debtors' estates (the Estate Professionals) consents as of the Effective Date to a discount of all post-petition and allowed fees up to a maximum of 15% of such allowed fees, net of disbursements. Notwithstanding the foregoing Epiq consents to a discount of 10% of collected fees net of mailing costs. The discount shall be applied against final allowed fees. With respect to B Riley (which does not file fee applications), the discount shall be applied to all receipts collected since the filing of the petitions in the ANS Debtor Cases and shall be deducted from final fees.

(ix) The Liquidity Projection attached to the Settlement Agreement as Exhibit A shall serve as a Budget and a limitation on the expenses to be incurred by the Debtors in connection with the continued administration of the estates through February 15, 2025. To the extent that the Debtor incurs expenses in addition to those as budgeted it cannot pay such additional expense absent the consent of Key Bank and the Committee.

(x) Where there is a conflict between the terms of the Plan and the terms of the Settlement Agreement the terms of the Plan shall control.

(xi) The Settlement Agreement is to be viewed as a supplement to the Plan and contains material terms agreed to by the parties in agreeing to vote in favor of the Plan.

(xii) Default by a Party to the Settlement Agreement shall be deemed a default under the Plan and vice versa.

(xiii) The Settlement Agreement does not include any release of one party as against another nor does it include an agreement by the Debtor to the allowance of the Unsecured Claim of Key Bank. Consent to the allowance of the Key Bank claims and the exchange of releases as among the Settling Parties is a provision in the Plan only and is effective on

the Effective Date. In the event that the Plan attached as Exhibit A is not confirmed, absent the written consent of all of the Settling Parties no releases shall be exchanged.

(xiv) The term Effective Date means the Effective Date of a Plan in which the Debtors are Plan Proponents.

### B. Benefits of the Settlement Agreement.

14. The settlement terms included herein are the product of good faith negotiations between the settling Parties.

15. Approving the Settlement Agreement will pave the way to the filing of a plan which will be consensual as to the Debtors, the Committee, Key Bank and the Settling Shareholders and will avoid further time and expense in these matters and is in the best interest of the Debtors' estate.

16. The Debtors seek approval of the Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019 and §105 of the Bankruptcy Code.

### IV. LEGAL ARGUMENT & REQUESTED RELIEF

17. Federal Rule of Bankruptcy Procedure 9019(a) provides "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

18. The decision to approve or disapprove a settlement is within the sound discretion of the bankruptcy judge." See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).

19. The Debtors seek approval, pursuant to § 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019 of the Settlement Agreement.

20. In Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, *reh'g denied*, 391 U.S. 909 (1968), the Supreme Court instructed as to those factors to be considered in determining whether to approve a settlement. The factors outlined by the Supreme Court in Anderson have been uniformly summarized as follows:

A. the probability of success in the litigation.

B. the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it;

C. the difficulties, if any, to be encountered in the matter of collection; and

D. the paramount interest of the creditors.

See Martin, 91 F.3d at 393 (3d Cir. 1996); In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998); In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997); In re Pa. Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993); In re Grant Broad. of Philadelphia, Inc., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

21. Bankruptcy Rule 9019 authorizes this Court to approve the Settlement Agreement.

22. The decision whether to accept or reject a compromise is committed to the sound discretion of the Bankruptcy Court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." See Louise's, 211 B.R. at 801; see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

23. The settlement need not be the best that the debtor could have achieved but must only fall "within the reasonable range of litigation possibilities." See In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979).

24.    In making its determination, a court is not to substitute its own judgment for that of the debtor. See Neshaminy Office Bldg., 63 B.R. at 803.

25.    Moreover, it is not necessary for the court to conduct a truncated trial of the facts of the merits underlying the dispute. See Grant Broad., 71 B.R. at 396; see also In re A&C Prop., 784 F.2d 1377, 1384 (9th Cir.), *cert. denied*, 479 U.S. 854 (1986).

26.    Rather, the court need only "canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." See Neshaminy Office Bldg., 62 B.R. at 803, quoting In re W.T. Grant Co., 4 B.R. 53, 69 (S.D.N.Y. 1977).

27.    The settlement proposed by the Debtors clearly falls within the range of reasonableness for purposes of satisfying Rule 9019 criteria. In the present case, the proposed settlement is fair, reasonable, and in the best interest of the Debtor's estate.

28.    Absent the settlement, litigation among the Parties will be costly and time-consuming for both the Debtor's estate and the other settling parties. The Settlement puts the chapter 11 case on track for confirmation of a Liquidating Plan within the next several months. Alternatively, the litigation among the Parties will take years.

29.    The Debtors and the Settling Parties spent many hours in negotiations in order to resolve the issues between them, and there are many other issues which will be resolved by confirming a Liquidating Plan. This Settlement Agreement will allow the Parties to progress to a Plan.

30.    The settlement is limited by its terms but falls within a reasonable range of Court approval.

31. In exercising its business judgment, the Debtors have determined that the settlement is in the best interest of the Debtors 'estate and its creditors and that the uncertainty of continued litigation between the Parties will only increase the financial burdens on the Debtors' estate. Id.

32. The Bankruptcy Court need only canvas the issues between the Debtors and the other Settling Parties to determine that the settlement does not fall below the lowest point in the range of reasonableness, and that the Settlement Agreement should be approved pursuant to Rule 9019 and Section 105 of the Bankruptcy Code.

## V. **CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that the Court enter an order in the form attached approving the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019, permitting the Debtors and the other Settling Parties to execute same and to proceed to effectuate same, and providing such other and further relief as the Court deems just and equitable.

Dated: December 16, 2024    By:    /s/ David L Bruck
David L. Bruck, Esquire
Greenbaum Rowe Smith & Davis LLP
99 Wood Avenue South
Iselin, New Jersey 08830
Tel: (732) 549-5600
Fax (732) 549-1881
Email: dbruck@greenbaumlaw.com
Counsel to the ANS Debtors